SHAFFNER v CITY OF RIVERVIEW

Docket No. 81562. Submitted April 3, 1986, at Detroit. Decided
September 9, 1986.

Leonard A. Shaffner sustained injuries when he was crushed
between two golf carts during a golf game played at a course
owned by the City of Riverview. Shaffner and his wife, Beatrice
Shaffner, filed suit in the Wayne Circuit Court, alleging negli-
gence and breach of implied warranties by defendant city as
lessee of the golf carts and owner of the golf course, negligence
and breach of implied warranties by Michigan Golf Cars, Inc.,
the lessor of the golf carts, and negligence by defendant David
Branchick, who was playing golf with plaintiff at the time of
the incident and unsuccessfully attempted to stop the golf cart
that rolled downhill towards Shaffner. The city filed a third-
party action against Michigan Golf Cars, Inc., seeking indemni-
fication. Michigan Golf Cars, Inc., and Branchick settled for
$25,000 and $21,000 respectively and obtained from plaintiffs
releases from direct liability. Following a jury trial, the jury
awarded plaintiffs $163,200, finding that the city was negligent
and that it had breached implied warranties. The trial court,
Susan D. Borman, J., ruled against the city on its indemnifica-
tion claim against Michigan Golf Cars, Inc., and reduced the
jury award by $46,000, the amount plaintiffs recovered from
their settlement with the other defendants. The city appealed.

The Court of Appeals held:

1. The record did not support the city's claim that the
releases which plaintiffs granted to the other defendants were
not executed in good faith. Therefore, the trial court did not err
in ruling that the releases discharged the other defendants
from liability for contribution.

2. The city was not entitled to indemnification by Michigan

REFERENCES

Am Jur 2d, Contracts §§ 21, 22, 240-280, 286.

Am Jur 2d, Release §§ 37-43.

What statute of limitations applies to action for contribution
against joint tortfeasor. 57 ALR3d 927.

Contribution or indemnity between joint tortfeasors on basis of
relative fault. 53 ALR3d 184.

See also the annotations in the Index to Annotations under Indem-
nity; Negligence.

Golf Cars, Inc., under any of the bases argued by the city. The lease contract did not expressly provide for indemnification nor can an agreement for indemnification be implied from the facts or under the law.

3. The trial court did not abuse its discretion in admitting the deposition testimony of plaintiffs' witness who testified as an expert regarding the design of the golf carts and the danger posed by parking the carts on areas designated at the golf course in question.

Affirmed.

1. RELEASE — NEGLIGENCE — JOINT TORTFEASORS — "GOOD FAITH".

The term "good faith," as used in a provision of the Revised Judicature Act regarding releases from liability granted by an injured person to some but not all tortfeasors who may be liable for the person's injury, refers to the state of mind and perception, the honest belief and intention of the injured person and the tortfeasor (MCL 600.2925d; MSA 27A.2925[4]).

2. CONTRACTS — JUDICIAL CONSTRUCTION.

An unambiguous contract generally is not subject to interpretation and must be enforced as written.

3. INDEMNITY — COMMON-LAW INDEMNITY — IMPLIED CONTRACTUAL INDEMNITY.

Common-law indemnity or implied contractual indemnity is not available to a party who is not free from active negligence.

4. WITNESSES — EXPERT WITNESSES — APPEAL — RULES OF EVIDENCE.

A witness may be qualified to testify as an expert based on his knowledge, skill, experience, training, or education; qualification of a witness as an expert is within the trial court's discretion and the Court of Appeals will not reverse a trial court's admission or exclusion of expert testimony absent a clear abuse of discretion (MRE 702).

*Ralph H. Adams,* for plaintiff.

*Cummings, McClorey, Davis & Acho, P.C.* (by *Bernard P. McClorey*), for the City of Riverview.

*Hibbs, Welch & MacAlpine, P.C.* (by *Karen Russell* and *Andrew F. Valenti*), for Michigan Golf Cars, Inc.

Before: Cynar, P.J., and Wahls and E. E. Borradaile,* JJ.

Per Curiam. Defendant, City of Riverview, appeals as of right from a Wayne Circuit Court jury verdict awarding plaintiffs damages for injuries plaintiff Leonard Shaffner sustained when he was struck by a golf cart.

Leonard Shaffner was injured while he was playing golf on a golf course owned by the City of Riverview in the company of three other men, including David Branchick. After the men completed the first hole, they drove their golf carts to the second tee. Branchick parked his cart about five feet behind plaintiff's.

While plaintiff was standing behind his cart, Branchick saw his cart start to roll forward towards plaintiff. Branchick ran to the cart, jumped in it, and applied what he believed to be the brake. Unfortunately, Branchick actually hit the accelerator and the cart lunged forward, striking plaintiff's cart and pinning plaintiff between the two bumpers. Plaintiff's leg was severely injured as a result of the collision.

Plaintiffs filed the instant action, claiming negligence and breach of implied warranties by the City of Riverview as lessee of the golf carts and owner of the golf course. Plaintiffs also claimed negligence and breach of implied warranties by Michigan Golf Cars, Inc. (Golf Cars). Finally, plaintiffs claimed negligence by Branchick. The city filed a third-party complaint against Golf Cars for indemnification. Golf Cars and Branchick settled with plaintiffs prior to trial for $25,000 and $21,-000 respectively. They were thereupon granted releases from direct liability by plaintiffs. The case continued to trial with the city as the only princi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

pal defendant and Golf Cars as the third-party defendant. The jury found both negligence and a breach of implied warranties on the part of the city and awarded damages totalling $163,200. The trial court found no indemnity as a matter of law. The court credited the city with the $46,000 settlement and awarded judgment in the amount of $117,200.

Initially, the city argues that the parties did not enter the releases in good faith and, therefore, Branchick and Golf Cars, as joint tortfeasors, are liable to the city for contribution. In support of its position, the city relies on the relatively small amounts of the settlements in comparison to the severity of the injury and the size of the jury award as well as the relative negligence of the parties.

The city's claim for contribution, as well as Golf Cars' defense thereof, rests upon the following provision of the Revised Judicature Act:

Sec. 2925d. When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide.

(b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor. [MCL 600.2925d; MSA 27.2925(4).]

Although "good faith" is not defined within the

contribution statute, the Supreme Court has previously considered the meaning of the term within the context of the Uniform Narcotic Drug Act, MCL 335.57; MSA 18.1077. (Repealed by 1971 PA 196).

> "Good faith" consistently has been deemed a standard measuring the state of mind and perception of the defendant—a measure of honest belief and intention. See, *e.g., People v Averill,* 179 Mich 224; 146 NW 189 (1914); and *People v Rice,* 161 Mich 657; 126 NW 981 (1910). The Oxford English Dictionary, Vol 5, p 32, defines *good faith* as: "honesty of intention in entering into engagements". Even the Uniform Commercial Code, operating in a commercial law context, defines "good faith" generally as "honesty in fact in the conduct or transaction concerned". MCL 440.1201(19); MSA 19.1201(19). [*People v Downes,* 394 Mich 17, 26; 228 NW2d 212 (1975).]

The city points to the size of the settlements in relation to the fault of the parties as evidence of bad faith. However, while there is a "reasonable relationship" between comparative negligence principles and contribution, comparative negligence principles do not control the contributions of settling tortfeasors under MCL 600.2925d; MSA 27A.2925(4). See *Mayhew v Berrien Co Rd Comm,* 414 Mich 399, 402; 326 NW2d 366 (1982); *Bacon v State Highways Dep't,* 115 Mich App 382; 320 NW2d 681 (1982). However, even if we could determine with accuracy the fault of the settling parties, we do not believe that the settlements executed in the present case were so grossly disparate that they established bad faith as a matter of law.

We are similarly unpersuaded that the other factors alleged by the city establish bad faith. The transcript of the July 27, 1984, settlement hearing indicates that the city participated in extensive

settlement negotiations and conferences. There is no support on the record that the parties used the settlement negotiations as a means to manipulate the city's liability. The record is equally devoid of any other evidence which would permit either this Court or the lower court to make a factual determination of bad faith.

Based on the facts before us, we are unable to conclude that the releases were not executed in good faith. Accordingly, the court did not err in denying the city's motion for contribution.

The city also argues that it was entitled to express contractual indemnity, implied contractual indemnity and common-law indemnity from third-party defendant, Golf Cars. The city bases its claim for express contractual indemnity on the following provision contained in the parties' contract:

> 7. *Risks of Loss and Insurance.* The Lessor agrees to keep all of the said property insured for fire, theft, combined additional coverage and $150.00 deductible collision insurance and liability insurance in minimum limits on [sic] One Hundred Thousand ($100,000.00) Dollars each person, Three Hundred Thousand ($300,000.00) Dollars to each occurrance [sic] for bodily injury and Twenty-Five Thousand ($25,000.00) Dollars property damage liability. Lessee agrees to be responsible for the deductible for damage caused by players, employers and vandals.

At the conclusion of the trial, the court found that there was no indemnification. Unfortunately, the city has failed to file the transcripts containing the trial court's findings on the express indemnification issue, and thus we are unable to determine the basis for the trial court's ruling. Nevertheless, after reviewing the above provision, we agree that

it is not a provision for contractual indemnification.

> There are several well established rules of construction of indemnity contracts. An indemnity contract is construed in accordance with the rules for the construction of contracts generally. The cardinal rule in the construction of indemnity contracts is to enforce them so as to effectuate the intentions of the parties. Intention is determined by considering not only the language of the contract but also the circumstances surrounding the contract, including the situation of the parties. Indemnity contracts are construed most strictly against the party who drafts them and against the party who is the indemnitee. *Pritts v J I Case Co,* 108 Mich App 22, 29; 310 NW2d 261 (1981). [*Chrysler Corp v Brencal Contractors Inc,* 146 Mich App 766, 771; 381 NW2d 814 (1985).]

It is an equally well established rule of contract interpretation that contracts which are unambiguous must be enforced as written. *Emmons v Easter,* 62 Mich App 226, 231; 233 NW2d 239 (1975). In this case, the contract between the city and Golf Cars does not expressly mention indemnification. Moreover, the contract provision unambiguously calls only for Golf Cars, as lessor, to purchase insurance. We also note that Douglas Wood, a part-owner of Golf Cars, testified that the contract provision was not intended as a contract for indemnification, and that the city has failed to point out any contrary interpretation. When the above-stated rules of contract interpretation are applied to these facts, we are unable to conclude that the parties intended the contract to include indemnification.

We are likewise unable to find that either an implied contract to indemnify existed or that the city was entitled to common-law indemnity. Both

common-law indemnity and implied contractual indemnity require that the person seeking indemnification must prove freedom from active negligence. *Skinner v D-M-E Corp,* 124 Mich App 580, 585; 335 NW2d 90 (1983); *Peeples v Detroit,* 99 Mich App 285, 292; 297 NW2d 839 (1980).

The city argues that the court, in instructing the jury, failed to distinguish between active and passive negligence and therefore that the jury was not able to properly decide the issues of common-law or implied contractual indemnification. Unfortunately, despite our request, the city has failed to supply the transcript containing the jury instructions. Accordingly, we are unable to review the propriety of the instructions or the city's objections to either the instructions or verdict form. Since the jury verdict states only that the city was negligent, we cannot conclude that the city proved freedom from personal fault so as to entitle it to either common-law or implied contractual indemnification. Based on the record before us, we find that the trial court properly rejected the city's claims for indemnification.

Because the city has failed to file the necessary transcripts, we are unable to review its claim that the verdict form or jury instructions were improper.

The city's final claim is that the court erred in admitting the deposition testimony of Dr. Charles Nagler, plaintiff's expert witness. The basis of the city's claim is that Nagler was not qualified to offer expert testimony regarding golf course design and golf carts. A witness may be qualified to testify as an expert based on his or her knowledge, skill, experience, training, or education. MRE 702. Whether a witness is qualified to testify as an expert is a matter within the discretion of the trial court. *Strzelecki v Blaser's Lakeside Industries of*

*Rice Lake, Inc,* 133 Mich App 191, 198; 348 NW2d 311 (1984).

Dr. Nagler testified that he was a consultant/engineer. His area of expertise was accident reconstruction pertaining to on- and off-road vehicles, including golf carts. In preparation for the case, Nagler reviewed several depositions, photographs of the golf carts, and sat in and personally examined the golf carts, and visited the golf course where the accident occurred. Nagler testified regarding the design of the golf carts and the danger posed by parking the carts on designated areas. Contrary to the city's contention, Nagler did not testify to the general design of the course or to the feasibility of alternative golf course design.

In view of Nagler's experience in accident reconstruction, the court did not abuse its discretion in admitting Nagler's testimony. There was sufficient evidence to establish that Nagler had the necessary expertise to evaluate both the design of the golf carts and the dangers posed by their use. Moreover, we agree with the trial court that if the city felt Nagler's qualifications were inadequate, it should have requested further voir dire. Given the nature of the objection, the issue could have been readily resolved at the deposition.

Affirmed.