MILLER v RIVERWOOD RECREATION CENTER, INC

Docket No. 176335. Submitted November 9, 1995, at Grand Rapids. Decided February 27, 1996, at 9:00 A.M. Leave to appeal sought.

Mary and Kenneth Miller brought an action in the Isabella Circuit Court against Riverwood Recreation Center, Inc., and Otto-Dufty Architects, P.C., seeking damages for injuries sustained by Mary Miller in a slip and fall accident in a building at Riverwood's golf course that had been renovated with the aid of Otto-Dufty's architectural services. The jury awarded the plaintiffs a verdict of $328,500 against the defendants jointly and severally. The jury also determined that Riverwood was seventy percent liable for Mary Miller's injuries and Otto-Dufty thirty percent liable. Before an order of judgment was entered, Riverwood reached a settlement with the plaintiffs and agreed to pay $25,000. The court, Paul H. Chamberlain, J., entered a judgment making Otto-Dufty liable for the entire amount of the verdict reduced by the $25,000 settlement. The court then denied a motion for contribution brought by Otto-Dufty and imposed sanctions against Otto-Dufty for attempting to mislead the court regarding the proper procedure to be used in attempting to enforce its alleged contribution right against Riverwood. Otto-Dufty appealed, alleging the settlement agreement was not "in good faith" and, therefore, Riverwood was not discharged from its liability for contribution.

The Court of Appeals *held:*

1. The pertinent statute, MCL 600.2925d(b); MSA 27A.2925(4)(b), specifically provides that a plaintiff's recovery against nonsettling defendants is reduced only by the settlement amount. The statute has two goals, the equitable sharing of liability and the settlement of lawsuits. The Legislature intended that the first goal should be subservient to the second in situations where they conflict.

2. Instead of concentrating on whether the settlement amount is reasonably related to the settling defendant's proportional liability as compared to other tortfeasors, "good faith"

REFERENCES

Am Jur 2d, Contribution §§ 68, 71, 75.
See ALR Index under Contribution.

should be analyzed with respect to the settling parties' negotiations and intent. Otto-Dufty did not present evidence of bad faith with regard to the settlement.

3. The trial court did not clearly err in imposing sanctions against Otto-Dufty for arguing that a motion for contribution was appropriate under MCL 600.2925c(2); MSA 27A.2925(3)(2). The statute, which allows a motion for contribution in favor of one judgment defendant against other judgment defendants, requires, as a prerequisite, that a judgment be entered against the party from which contribution is sought, not merely that a judgment be entered in the actior. generally, as Otto-Dufty contends.

Affirmed.

1. TORTS — CONTRIBUTION — SETTLEMENTS — JUDGMENTS.

The contribution statute provides that a plaintiff's recovery against nonsettling defendants in a tort action is reduced only by the settlement amount (MCL 600.2925d[b]; MSA 27A.2925[4] [b]).

2. TORTS — CONTRIBUTION.

The contribution statute seeks to advance two goals, the equitable sharing of liability and the settlement of lawsuits; it is the intent of the Legislature that the first goal should be subservient to the second in situations where they conflict (MCL 600.2925a, 600.2925b, 600.2925d; MSA 27A.2925[1], 27A.2925[2], 27A.2925[4]).

3. TORTS — CONTRIBUTION — SETTLEMENTS — WORDS AND PHRASES — GOOD FAITH.

"Good faith" for purposes of the contribution statute should be analyzed with respect to the settling parties' negotiations and intent, not by concentrating on whether the settlement amount is reasonably related to the settling defendant's proportional liability as compared to other tortfeasors (MCL 600.2925d; MSA 27A.2925[4]).

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Thomas M. Slavin*), for Otto-Dufty Architects, P.C.

*Kallas & Henk, P.C.* (by *Constantine N. Kallas*), for Riverwood Recreation Center, Inc.

Before: MARKEY, P.J., and BANDSTRA and J. M. BATZER,* JJ.

BANDSTRA, J. As often happens, we are asked in this case to creatively interpret the clear language of a statute to avoid an obvious, but arguably unfair, result. We cannot do this. Under the Michigan Constitution and its division of power between the Legislature and the judiciary, we are only authorized to implement statutes, not change them in response to policy arguments, regardless of how persuasive.

Defendant-appellant Otto-Dufty Architects, P.C., brought a cross-complaint against defendant-appellee Riverwood Recreation Center, Inc., seeking contribution. Both Otto-Dufty and Riverwood had been sued in the underlying lawsuit by plaintiffs Mary and Kenneth Miller, not parties to this appeal, who alleged defendants were responsible for Mary Miller's slip and fall accident. The accident occurred at a golf course owned and operated by Riverwood that had been renovated in a project in which Otto-Dufty was architecturally involved. The jury awarded plaintiffs a $328,500 verdict against Riverwood and Otto-Dufty, jointly and severally. The jury also determined that Riverwood was seventy percent liable for Mary Miller's injuries and Otto-Dufty thirty percent liable.

Following the verdict, but before an order of judgment was entered, Riverwood suggested that Otto-Dufty and Riverwood should jointly try to settle the case with plaintiffs and that Riverwood would be willing to pay $25,000 in settlement. Otto-Dufty declined that offer and Riverwood went forward with settlement, agreeing with plaintiffs to pay $25,000. As a result, an order of judgment was entered making Otto-Dufty liable for the en-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

tire jury verdict reduced only by the $25,000 amount paid in settlement by Riverwood, pursuant to Michigan's contribution statute, MCL 600.2925d(b); MSA 27A.2925(4)(b). Otto-Dufty contested that result in a motion for contribution that was denied pursuant to the statute.

This appeal centers mainly on the judgment order entered and the related denial of Otto-Dufty's motion for contribution. In addition, Otto-Dufty argues that sanctions should not have been imposed against it for attempting to mislead the court regarding the proper procedure to be used in attempting to enforce its alleged contribution right against Riverwood. We affirm.

The right to contribution in Michigan is controlled entirely by statute because there was no right to contribution at common law. *Reurink Bros Star Silo, Inc v Clinton Co Road Comm'rs,* 161 Mich App 67, 70; 409 NW2d 725 (1987). The contribution provisions of the Revised Judicature Act allow a joint tortfeasor "who has paid more than his pro rata share of the common liability" to seek contribution from other tortfeasors. MCL 600.2925a(2); MSA 27A.2925(1)(2). However, this right is limited "as otherwise provided in this act." MCL 600.2925a(1); MSA 27A.2925(1)(1). In another section, the statute specifies that "in determining the pro rata shares of tortfeasors in the entire liability as between themselves[,] . . . [t]heir relative degrees of fault shall be considered . . . [and] [p]rinciples of equity applicable to contribution generally shall apply." MCL 600.2925b; MSA 27A.2925(2). Again, this section contains a caveat that it is to be applied "[e]xcept as otherwise provided by law." *Id.*

At issue here is the application of MCL 600.2925d; MSA 27A.2925(4):

When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide.

(b) It reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

Otto-Dufty contends that the settlement between Riverwood and plaintiffs was not "in good faith" and, thus, this statute does not discharge Riverwood from its liability for contribution to Otto-Dufty.

Otto-Dufty argues that we should consider the settlement not in good faith because of its result, i.e., because Otto-Dufty must pay far more than its pro-rata share of plaintiffs' damages. Hypothetically, under the jury finding that Riverwood was seventy percent liable for plaintiffs' damages, Riverwood would have paid more than $200,000 to plaintiffs. Otto-Dufty would have paid less than $100,000 as a result of its thirty percent liability. However, as a result of the settlement and the trial court's application of the statute, the judgment against Otto-Dufty was nearly a quarter of a million dollars,[1] Riverwood must pay plaintiffs only $25,000, and Otto-Dufty has no right against Riverwood for contribution. Because this result is

---

[1] The trial court's computations in the order of judgment resulted from applying interest and present value principles to the jury award under MCL 600.6013; MSA 27A.6013 and MCL 600.6306; MSA 27A.6306. These computations have not been challenged on appeal.

so disproportionate in light of the jury's finding of fact regarding Otto-Dufty's relatively limited liability for Mary Miller's injuries, Otto-Dufty argues that the settlement agreement should not be considered to be "in good faith" under the statute.

In the absence of any compelling Michigan authority regarding the statutory meaning of good faith,[2] Otto-Dufty relies heavily on the majority opinion in *Tech-Bilt, Inc v Woodward-Clyde & Associates,* 38 Cal 3d 488; 213 Cal Rptr 256; 698 P2d 159 (1985), and cases following it.[3] The *Tech-Bilt* majority reasoned that the California contribution statute has two goals, the equitable sharing of costs among parties at fault and the encouragement of settlements. *Id.* at 494. The majority reasoned that neither of these goals should be applied to defeat the other, but, instead, that they should be accommodated even though they are not necessarily always harmonious. *Id.* The majority decided that, by including a requirement that settlement agreements be entered into in good faith, the Legislature intended that courts should "inquire, among other things, whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." *Id.* at 499.

The *Tech-Bilt* majority came to its conclusion because of legislative action that occurred after

[2] Both parties rely upon *Shaffner v Riverview,* 154 Mich App 514; 397 NW2d 835 (1986), to support their competing interpretations of the good-faith requirement. This is possible because *Shaffner* is somewhat enigmatic. In *Shaffner,* the panel apparently rejected an argument that "the size of the settlements in relation to the fault of the parties [was] evidence of bad faith," but did so using language suggesting that settlements must bear a "reasonable relationship" to relative fault and that a "grossly disparate" settlement might indicate "bad faith as a matter of law." *Id.* at 518.

[3] Otto-Dufty also relies on cases deciding whether federal law bankruptcy filings were in "good faith," precedents we find wholly inapposite.

judicial decisions adopting a proportionate-liability test of good faith. For the majority, this constituted legislative affirmation of that interpretation. *Id.* at 495-497, 498-499. The court also noted that its understanding of good faith was consistent with comments to the Uniform Contribution Among Tortfeasors Act, 12 ULA 63 (1955 rev), upon which the California statute was modeled. *Id.* at 494, n 4.

In dissent, Chief Justice Rose E. Bird persuasively reasoned that the 1955 revisions of the Uniform Contribution Among Tortfeasors Act "represented a policy decision to encourage settlement [which] . . . abandoned as unworkable [the] earlier attempt to protect nonsettling parties from inequity other than that caused by collusive conduct." *Id.* at 504. Chief Justice Bird criticized the majority's conclusion that the legislature had adopted a judicial interpretation of good faith requiring proportionality because the judicial interpretation purportedly relied upon was "mere dictum." *Id.* at 503. Chief Justice Bird adopted a much more limited view of good faith: "[A] settlement satisfies the good faith requirement if it is free of corrupt intent, i.e., free of intent to injure the interests of the nonsettling tortfeasors. A settlement is made in bad faith only if it is collusive, fraudulent, dishonest, or involves tortious conduct." *Id.* at 502.

While the *Tech-Bilt* majority's reasoning regarding the meaning of "good faith" in the California statute may or may not be correct, it is not persuasive with regard to the Michigan statute. Otto-Dufty can point to no Michigan legislative history suggesting any intent to adopt a judicial interpretation of "good faith" that would require that a settlement agreement must reflect proportional liability. As in California, the Uniform Contribution Among Tortfeasors Act was the basis of the

Michigan contribution statute. *Theophelis v Lansing General Hosp,* 430 Mich 473, 481; 424 NW2d 478 (1988). We note that, at one point, this uniform act included a section providing that a settling tortfeasor was not released from liability unless the release provided that the plaintiff's ultimate recovery would be reduced to the extent of the released tortfeasor's pro-rata share of the damages, not just the settlement amount. *Tech-Bilt, supra* at 504. That section provided protection for other tortfeasors, similar to the protection Otto-Dufty seeks here. However, this protection was removed in later versions of the uniform act, *id.,* and it is not included in the Michigan statute at issue here. To the contrary, the Michigan statute specifically provides that a plaintiff's recovery against nonsettling defendants is reduced only by the settlement amount. MCL 600.2925d(b); MSA 27A.2925(4)(b); *Mayhew v Berrien Co Road Comm,* 414 Mich 399, 410-411; 326 NW2d 366 (1982).

Beyond that, as in California, the Michigan contribution statute seeks to advance two goals, the equitable sharing of liability and the settlement of lawsuits. *Id.* at 410. However, it appears that the Legislature intended that the first goal should be subservient to the second in situations where they conflict. As previously noted, §§ 2925a and 2925b, which provide the right to contribution and advance the equitable sharing goal, are both limited by an "except as otherwise provided" clause. The act otherwise provides, in § 2925d, a strong incentive to settle: a settling tortfeasor is protected from contribution claims made by other tortfeasors.

This primary goal of inducing settlements would be undermined by the broad interpretation of "good faith" that Otto-Dufty promotes. "As the cases and commentators note, settlement is depen-

dent upon the degree to which the settling defendant can be assured of the settlement's finality." *Tech-Bilt, supra* at 506-507. A joint tortfeasor has an incentive to settle a case only if the amount agreed upon represents the final and total liability that will have to be paid for the matter to any party. Adopting a "good faith" definition that would allow a court to impose further liability under contribution principles would reduce that incentive. "It will be difficult for a settling defendant to predict whether the trial court will find his settlement to be in good faith. The imprecise nature of the test also produces the added risk that despite the deference paid to the trial court, a favorable good faith determination will be reversed by the appellate court." *Id.* at 507. This definition would make it "impossible for one tortfeasor alone to take a release and close the file." *Id.* at 504.

Otto-Dufty's definition of "good faith" might, in effect, completely eviscerate the settlement incentive that § 2925d clearly seeks to provide. In essence, Otto-Dufty's argument is that a settlement is not in good faith unless a settling defendant pays approximately its proportionate share of damages. But, in that situation, another defendant has no right to contribution from the settling defendant. MCL 600.2925a(2); MSA 27A.2925(1)(2). In other words, Otto-Dufty would have us interpret "good faith" in a fashion that makes § 2925d's protection against contribution claims available only where there is nothing to be protected against. We will not adopt this nugatory interpretation of this section. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992); *Skene v Fileccia,* 213 Mich App 1, 5; 539 NW2d 531 (1995).

In sum, we disagree with the *Tech-Bilt* majority and believe that its treatment of "good faith" will

severely undermine the settlement goal of the Michigan statute. With similar reasoning, courts in other states have also rejected the *Tech-Bilt* majority approach. *Stubbs v Copper Mountain, Inc,* 862 P2d 978 (Colo App, 1993), aff'd sub nom *Copper Mountain, Inc v Poma of America, Inc,* 890 P2d 100 (Colo, 1995); *Smith v Monongahela Power Co,* 189 W Va 237; 429 SE2d 643 (1993); *Mahathiraj v Columbia Gas of Ohio, Inc,* 84 Ohio App 3d 554; 617 NE2d 737 (1992); *Velsicol Chemical Corp v Davidson,* 107 Nev 356; 811 P2d 561 (1991); *Noyes v Raymond,* 28 Mass App 186; 548 NE2d 196 (1990); *Ruffino v Hinze,* 181 Ill App 3d 827; 537 NE2d 871 (1989); *Lowe v Norfolk & W R Co,* 753 SW2d 891 (Mo, 1988); *Torres v State of New York,* 67 AD2d 814; 413 NYS2d 262 (1979); but see *Int'l Action Sports, Inc v Sabellico,* 573 So 2d 928 (Fla App, 1991).

Instead of concentrating on whether the settlement amount is reasonably related to the settling defendant's proportional liability as compared to other tortfeasors, we conclude that "good faith" should be analyzed with respect to the settling parties' negotiations and intent. This is the usual way in which the "good faith" of agreements is analyzed. See, e.g., *People v Downes,* 394 Mich 17, 26; 228 NW2d 212 (1975); *Shaffner v Riverview,* 154 Mich App 514, 518; 397 NW2d 835 (1986). We see no reason to conclude that the Legislature meant something different in requiring a "good faith" settlement agreement in § 2925d.

"Good faith" has been defined as a standard measuring the state of mind, perceptions, honest beliefs, and intentions of the parties. *Shaffner, supra.* In the commercial law context, the Uniform Commercial Code defines "good faith" as "honesty in fact in the conduct or transaction concerned." MCL 440.1201(19); MSA 19.1201(19); *Downes, su-*

*pra.* In addition, Black's Law Dictionary (6th ed), p 693, defines "good faith," in part, as "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage." In contrast, "bad faith," in the insurance context, has been defined as "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty." *Commercial Union Ins Co v Liberty Mutual Ins Co,* 426 Mich 127, 136; 393 NW2d 161 (1986); *In re Green Charitable Trust,* 172 Mich App 298, 315; 431 NW2d 492 (1988). Furthermore, a claim of bad faith cannot be based upon negligence or bad judgment if "the actions were made honestly and without concealment." *Commercial Union, supra* at 137.

Otto-Dufty argues that Riverwood falsely represented its financial situation to plaintiffs to induce the settlement agreement. Specifically, Otto-Dufty contends that Riverwood threatened to seek bankruptcy protection unless plaintiffs would accept a relatively small amount in settlement, but, in fact, Riverwood was financially secure. Even if this were the case, representations of this sort are commonly made in settlement negotiations and plaintiffs were free to demand whatever financial information they wanted from Riverwood in weighing this factor. Moreover, plaintiffs contended, at a hearing before the trial court, that their settlement with Riverwood was largely entered into to avoid a Riverwood appeal of the jury verdict.[4] Again, this is a common inducement for settlement, and Otto-Dufty has not come forward

---

[4] Otto-Dufty makes much of the fact that the settlement agreement in this case was entered after a jury verdict, in contrast to, for example, *Shaffner,* where the panel noted that it could not "determine with accuracy the fault of the settling parties." *Id.* at 518. However, while the jury verdict provides some determination of relative fault, that determination is tentative in a case like this where, absent a settlement, an appeal is likely.

with any evidence of "bad faith" in the sense that Riverwood's actions were "arbitrary," "reckless," dishonest, and made with concealment. *Id.* at 136-137.

We fully understand Otto-Dufty's basic complaint, that it is unfair to require it to pay most of plaintiffs' damages when the jury found it minimally liable. That result is, however, required by the statute, and Otto-Dufty's arguments should be addressed to the Legislature.[5]

Finally, Otto-Dufty argues that sanctions should not have been awarded against it because it did not intend to mislead the trial court in arguing that a motion for contribution was appropriate under MCL 600.2925c(2); MSA 27A.2925(3)(2). We review the trial court's findings of fact relating to the imposition of a sanction to determine whether they are clearly erroneous, meaning that we are left with a definite and firm conviction that a mistake has been made. *In re Stafford,* 200 Mich App 41, 42-43; 503 NW2d 678 (1993). We note that the statute at issue allows a motion for contribution "in favor of 1 against other judgment defendants." This seems to require, as a prerequisite, that judgment be entered against the party from which contribution is sought, not merely that a judgment be entered in the action generally as Otto-Dufty contends. Accordingly, we do not conclude that the trial court was clearly erroneous in imposing sanctions.

We affirm.

---

[5] Otto-Dufty's predicament stems from the fact that it is jointly and severally liable for all of plaintiffs' damages. We note that the Legislature has recently enacted a law, inapplicable to this case, that significantly changes joint and several liability principles. 1995 PA 249.