*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* PARIS ACADEMY.

---

PARIS ACADEMIES OF COMPELLING
EDUCATION, INC.,

        Appellant,

v

THOMAS WOODS, Receiver of the PARIS
ACADEMY,

        Appellee.

UNPUBLISHED
September 23, 2024
10:40 AM

No. 367275
Saginaw Circuit Court
LC No. 18-036807-PR

---

Before: RICK, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

Appellant, Paris Academies of Compelling Education, Inc. (PACE), appeals as of right the trial court's order terminating a receivership over Paris Academy, and discharging its receiver, appellee Thomas Woods. PACE challenges the trial court's earlier order denying its motion for leave to commence suit against Woods for his alleged gross negligence in failing to timely file an administrative appeal with the Michigan Department of Education (MDE) to recover state aid to which Paris Academy was allegedly entitled. We affirm.

## I. UNDERLYING FACTS

Paris Academy was a public school academy located in Saginaw, which began operating in 2016 pursuant to a charter contract with the Genesee School Board. On June 30, 2018, Paris Academy permanently closed. PACE, who provided education and management services to the school, was a creditor of the Academy.

In July 2018, pursuant to a joint motion filed by Paris Academy and PACE, the trial court entered a stipulated order appointing Woods as receiver to liquidate the Academy's assets, wind

-1-

up its affairs, and dissolve the institution.[1] The receivership order vested Woods with certain powers and duties, including "[t]o maintain, secure, and preserve the Receivership Property," "[t]o assume control over the Receivership Property and to collect and receive . . . all claims for State/Federal Aid and Grants . . . ." Pertinent here, the order further provided as follows:

> 9.A     No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this Court permitting the suit or action provided, however, that no prior court order is required to file a motion in this action to enforce the provision of this Order or any other order of this Court in this action.

* * *

> 9.C     The [R]eceiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, expect [sic, except] for claims due to their gross negligence, gross or willful conduct, malicious acts and/or the failure to comply with this Court's orders.  In no event shall the Receiver have any liability for any act, conduct or event relating to the Petitioner, to the education of any current or former student, or to the School, that occurred prior to the Receiver's appointment.

During the receivership, Woods attempted to recover state aid allegedly owed to Paris Academy that MDE improperly withheld after the Superintendent of Public Instruction (SPI) made invalid reductions to the school's student count pursuant to audit determinations involving the 2016-2017 and 2017-2018 school years.  Woods eventually asked the trial court to compel MDE/ SPI to pay the receiver more than $1.7 million in state aid to which Paris Academy was allegedly entitled.  Woods further claimed that MDE/SPI failed to timely provide the audit results to Paris Academy, which deprived the Academy of its due-process rights to review the student-count reductions and to appeal the findings.  The SPI denied that the Academy was entitled to any state aid, and asserted that neither the Academy nor Woods had availed themselves of the administrative process for appealing an audit determination within the required timeframe.

Over one year later, the dispute over the state aid remained unresolved.  Woods and the SPI eventually agreed to permit Woods to submit an administrative appeal of the audit reports, pursuant to a stipulated order, which the trial court entered on March 22, 2022, providing as follows:

> IT IS HEREBY ORDERED that The Paris Academy, through the Receiver, may submit an administrative appeal of the Genesee Intermediate School District's 2016-2017 and 2017-2018 audit reports (Audit Reports) relating to The Paris Academy with the Michigan Department of Education's Office of Financial Management, in accordance with the Pupil Accounting Administrative Code Rules, the

---

[1] See MCL 600.2926; MCR 2.622.

State School Aid Act, the Michigan Department of Education (MDE) Pupil Auditing Manual, and other pertinent statutes, within 20 days after entry of this Order. Failure to timely submit the appeal request in accordance with applicable statutes, rules, and manuals shall constitute a knowing and intentional waiver by The Paris Academy and the Receiver of all rights to challenge the Audit Reports.

MDE, in turn, agreed to produce nonexempt records responsive to Woods's previous requests under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, from December 18, 2018, and July 3, 2020, at no cost within 10 business days after entry of the order.

It is not disputed that MDE timely produced the requested records within 10 business days. However, Woods did not submit the administrative appeal within the required 20 days after entry of the stipulated order, despite his agreement to waive any challenge to the audit reports if he did not timely submit the appeal. Woods attempted to remedy the situation by seeking from MDE, the day *after* the stipulated deadline passed, a four-day extension to submit the appeal which MDE denied. Woods filed the appeal, nine days past the appeal deadline, but the MDE/SPI denied it as untimely. Woods then moved the trial court to retroactively extend the deadline by an additional 10 days in an attempt to render his late appeal timely, which the court denied.

In court filings, Woods asserted that he "made a good faith effort" to file the appeal by the stipulated deadline, but that ultimately the agreed-upon 20 days was not enough time to complete the task. Woods explained that he received the requested FOIA information from MDE within six days of the deadline to submit the appeal, that he had "no idea whether he would receive everything he required from the FOIA request or how long it would take to go through the materials," and that he was obliged to examine onerous volumes of data and records.[2] Woods elaborated that he initially requested 30 days to file the appeal, but "MDE made it clear to the Receiver that it was 20 days take it or leave it." He explained that, when he agreed to the 20-day deadline, he was "faced with a dilemma" of either seeking the trial court's intervention, which he believed would be a waste of time, or accepting that deadline, then attempting to complete the appeal within it or seeking an extension from MDE if needed.

MDE/SPI disputed Woods's claim that he was "strong-armed into agreeing to an onerous 20-day filing deadline," asserting that Woods himself proposed 20 days.[3] Further, according to MDE/SPI, Woods never expressed the concern that he did not have enough time to prepare the appeal.

After MDE/SPI refused to accept Woods's late appeal, PACE moved the trial court for leave to commence suit against Woods for his "inexplicable failure" to timely file the

---

[2] A letter from the SPI to Woods suggested that Woods told MDE/SPI's counsel that he "incorrectly calendared the deadline," but Woods denied mis-calendaring the deadline.

[3] MDE/SPI supported that assertion with an e-mail thread between Woods and their counsel showing that Woods originally proposed 30 business days to file the appeal, after which their counsel proposed 10 days, which Woods rejected, but indicated that he would accept 20 days.

administrative appeal, which resulted in the waiver of the right to challenge the audit reports and forever barred Paris Academy's claim against MDE/SPI. According to PACE, as Paris Academy's sole creditor, Woods's conduct caused it "grievous injury."

In opposition to PACE's motion, and relying on *In re Motion for Leave to Sue the Receiver of Venus Plaza Shopping Ctr*, 228 Mich App 357; 579 NW2d 99 (1998), Woods argued that an element of bad faith was required to bring suit against a receiver, and that the record contained no evidence that he had acted in bad faith. Woods asserted that missing the deadline to submit the administrative appeal was nothing worse than legal malpractice stemming from ordinary negligence, which was not sufficient. Woods alternatively argued that the appeal would not have succeeded in any event, because Paris Academy had forfeited the funds PACE sought to recover before his appointment as receiver. Woods further asserted that PACE had no legal basis to recover the funds MDE withheld, because "all property of the Academy acquired with money appropriated pursuant to the [State School Aid Act of 1979, MCL 388.1601, *et seq*.], which would include the monies forfeited and then withheld because of pupil accounting and other irregularities, would revert back to the state leaving the Academy with no legal right or remedy for the monies PACE seeks."

At the motion hearing, PACE asserted that it was not required to establish that Woods acted in bad faith in order to bring suit against him, because the receivership order permitted suit against the receiver for gross negligence, explaining as follows:

> The receiver seems to be arguing that that motion should be denied because the magic words "bad faith" appear nowhere within our motion. But you've got to go back to this Court's order, specifically. When . . . a separate lawsuit can be filed is defined at paragraph 9C of that order that says:

> The receiver is essentially immune from suit, and I quote: ". . . except for claims due to their gross negligence, gross or willful misconduct, malicious acts, and/or failure to comply with this Court's order."

> So . . . someday, there may be a lawsuit if this Court allows us to bring one. In that separate lawsuit, we may be arguing about the necessity for bad faith, but bad faith doesn't appear anywhere within 9C.

> If the Court disagrees, the receiver's conduct in inexplicably blowing a clear deadline which resulted in the loss of a claim against the Michigan Department of Education, I believe, clearly fits within that definition.

> The receiver would have this Court prohibit a lawsuit unless the receiver had somehow intentionally or maliciously blown that deadline. But the cases that they rely upon for that proposition don't say that. Those cases simply say that a mere failure to exercise good business judgment is not, in and of itself, bad faith.

> But this isn't a receiver trying to run a shopping center or operate a business. This was . . . just simply, hey, you've got to file this claim by this precise date, and the receiver just failed to do so. It's nothing . . . like an exercise of [business] judgment.

The trial court denied PACE's motion, explaining that "the law is clear, you have to allege or prove bad faith. You may have negligence here, but that's not the standard in the case of . . . *Venus Plaza* . . . ."

This appeal followed.

## II. PRESERVATION

Before turning to the merits, we first address Woods's argument that PACE failed to preserve this issue for this Court's review.

"[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). See also *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Although, as Woods contends, PACE did not mention gross negligence or bad faith in its written motion, PACE raised the issue during the motion hearing. To preserve an issue for appeal, "a party need only bring the issue to the court's attention—whether orally or in a brief or both." *Glasker-Davis*, 333 Mich App at 228. Accordingly, that PACE "may not have fully briefed and argued this issue in their lower court pleadings, or that they now cite [additional] authority that the circuit court did not consider, does not preclude them from raising the issue on appeal." *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). Further, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis*, 333 Mich App at 228. For these reasons, we conclude that this issue is preserved for plenary appellate review.

## III. STANDARD OF REVIEW

We review a trial court's denial of leave to sue a receiver for an abuse of discretion. *Venus Plaza Shopping Ctr*, 228 Mich App at 359. "A trial court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 83-84; 910 NW2d 691 (2017).

"Whether the pleaded evidence fails to support a claim becomes a question of law where there is a total failure to prove one or more elements necessary to a cause of action." *Venus Plaza Shopping Ctr*, 228 Mich App at 359-360. "A trial court's decision regarding a matter of law is reviewed de novo on appeal." *Id*. at 360.

## IV. DISCUSSION

The sole issue on appeal is whether the trial court abused its discretion by denying PACE's motion to commence suit against Woods for gross negligence. We conclude that it did not.

A receiver's authority "derives . . . from the statutes and rules of court, the order appointing him, and specific orders which may from time to time be made by the court of his appointment." *Woodliff v Frechette*, 254 Mich 328, 329; 236 NW 799 (1931). A court-appointed receiver "is a fiduciary for the benefit of all persons appearing in the action or proceeding." MCR 2.622(A). "The duty of a receiver is . . . , under the order of the court, to preserve and care for the property and turn it over to the person who is ultimately decided to be entitled thereto." *Westgate*

*v Westgate*, 294 Mich 88, 91; 292 NW 569 (1940).  The office requires "the exercise of soundest judgment, and always the strictest impartiality . . . ." *First Nat'l Bank v E T Barnum Wire & Iron Works*, 60 Mich 487, 499; 27 NW 657 (1886).  The standard of care applicable to a court-appointed receiver is one of good faith.  See *Venus Plaza Shopping Ctr*, 228 Mich App at 361-362.

"In Michigan, leave of court must be obtained before bringing a lawsuit against a court-appointed receiver." *Id.* at 359.  An "element of bad faith" is required "when suing court-appointed receivers for actions taken and events occurring during the receivership." *Id*. at 361.  Whether "bad faith" needed to be alleged and shown is at the heart of this appeal.  On that point, this Court explained as follows:

> Venus argues that the case relied upon by the trial court, *In re Hudson* (*William Schuette Co v Hudson*), 258 Mich 176; 241 NW 868 (1932), [(hereinafter "*Hudson I*"),] does not directly concern the standard of care under which a receiver could be held personally liable.  That case dealt with the issue whether creditors could challenge the receivers' accounts. *Id*. at 177.  Unlike the present case, where Venus has not alleged any bad faith, the creditors in *Hudson* [*I*] did allege bad faith on the part of the receivers and sought to hold the receivers personally liable on those grounds. *Id*. at 180.  The Michigan Supreme Court found that although the receivers had made errors in judgment, they had, nevertheless, acted in good faith. *Id*. at 181.  As a result, the Court affirmed the lower court's decision to allow the receivers' accounts over the objection of the creditors. *Id*. at 183.  Two years later, our Supreme Court decided *In re Hudson (Morgan Sash & Door Co v Hudson)*, 266 Mich 274; 253 NW 295 (1934) (hereinafter "*Hudson* [*II*]").  *Hudson* [*II*] arose when the creditors sought to remove the receivers and sue one of the receivers for fraud that allegedly occurred within the context of the real estate transaction at issue in *Hudson* [*I*]. *Id*. at 275.  The Court noted that such litigation was barred by res judicata, having previously determined that the receivers had acted in good faith. *Id*. at 275-276.  Had bad faith *not* been a required element of the claim against the receiver, the fact that the Court had previously determined that the receivers acted in good faith would not have been dispositive.  Therefore, we find that the holding in *Hudson* [*II*] requires an element of bad faith when suing court-appointed receivers for actions taken and events occurring during the receivership.
>
> Venus also argues that the receiver's standard of care is to be determined solely by the court's order appointing the receiver. However, the Michigan Supreme Court has stated:
>
> > It is urged on the part of the respondent that, as the receiver is an officer of the court, the control of the court over him is plenary, that whatever he does is done under the direction of the court, and that he is bound to observe the order of the court . . . .  It is true that receivers are officers of the court.  It is also true that less discretion is given to passive receivers, whose duty consists simply of taking possession of property, and converting it into money, and distributing it, than is allowed to an active receiver, who is required

to manage a going concern . . . . Such an officer, to be successful, must possess large executive ability, and must be clothed with considerable discretion. . . . He may do such things, in the ordinary course of business, as to him, in good faith, seem necessary to render the business . . . profitable and successful.

The [above] clearly outlines the standard of care owed by a court-appointed receiver as one of good faith. Where a receiver is managing a going concern, as in the present case, errors in business judgment are not actionable. Because Venus' motion did not allege bad faith by the receiver, we find no abuse of discretion in the trial court's denial of Venus' motion. [*Venus Plaza Shopping Ctr*, 228 Mich App at 360-362, quoting *Morley v Saginaw Circuit Judge*, 117 Mich 246, 250; 75 NW 466 (1898).]

Under *Venus Plaza* and the cases cited, to be permitted to sue a court-appointed receiver, the party must allege that the receiver acted in bad faith. Accordingly, a trial court does not abuse its discretion by denying a motion for leave to bring suit against a receiver when evidence of bad faith is lacking.

PACE, however, argues that bad faith was not a required showing because the receivership order provided that the receiver may be held liable for gross negligence. But as this Court has stated in the context of evaluating a trustee's duty of good faith, "[a]n exculpatory clause generally is not considered to reduce or enlarge the standard of care required of the trustee in administering the trust, but acts to relieve the trustee of personal liability under the stated circumstances." *In re Green Charitable Trust*, 172 Mich App 298, 314; 431 NW2d 492 (1988). "The exculpatory clause does not preclude judicial review or application of the required standard of care." *Id*. The receivership order at issue here contained such a clause, limiting Woods's liability to claims based on his "gross negligence, gross or willful misconduct, malicious acts, and/or the failure to comply with the Court's orders." Although that clause limits Woods's personal liability to certain claims, it does not reduce or enlarge the standard of care required of Woods in performing his receivership duties. Accordingly, contrary to PACE's argument, bad faith remains a necessary element for an actionable claim against Woods for his actions taken during the receivership. *Venus Plaza Shopping Ctr*, 228 Mich App at 361-362. PACE may therefore bring an action for gross negligence against Woods, so long as factually supported allegations demonstrate that he acted in bad faith.[4]

---

[4] PACE attempts to distinguish *Venus Plaza* as follows:

Neither *Venus Plaza*, nor the cases on which the Court relied in reaching its holding in *Venus Plaza*, involve a receiver's decision not to meet an agreed-upon and court-imposed deadline knowing the adverse consequences of failing to meet such deadline—actions which amount to gross negligence. Rather, the cases in which Michigan courts have required a showing of bad faith to sue a receiver involve the exercise of discretion and business judgment. Although subsequent unpublished cases have overgeneralized the holding of *Venus Plaza*, which

This Court in *Venus Plaza*, however, did not specifically address what constitutes "bad faith" in the context of a receiver's actions. As discussed, this Court did indicate that, where a receiver is managing a going concern, errors in business judgment, made in good faith, are not actionable. *Venus Plaza Shopping Ctr*, 228 Mich App at 361. But, as PACE contends, this case did not involve Woods's management of a going concern; Woods was appointed to wind up Paris Academy's affairs and dissolve it. And, although Woods exercised his business judgment in deciding to attempt to recover the allegedly improperly withheld state aid by filing an administrative appeal with MDE, the record does not indicate that his failure to file the appeal by the stipulated deadline involved any error in that business judgment. For instance, the record does not indicate that, *at that time*, Woods, after further evaluating the claim, made a good-faith decision to forgo an appeal because he honestly believed that the claim lacked merit, or otherwise was not worth pursuing. To the contrary, Woods's actions after the deadline, in seeking an extension to submit the appeal with MDE as well as the court, and filing the appeal late, revealed his intent to vigorously pursue the appeal, not abandon it. Yet, Woods failed to take adequate action to seize the administrative appellate opportunity within the timeframe on which the parties had agreed.[5]

The issue thus becomes the extent to which Woods's lack of diligence in failing to timely file the administrative appeal was sufficient to establish bad faith as necessary for PACE to bring suit against him for gross negligence.

We have been pointed to no case in the receivership context that defines "bad faith." In the insurance context " '[b]ad faith' refers to an 'arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty,' involving something more than honest errors of judgment." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 228; 911 NW2d 493 (2017), quoting *Miller v Riverwood Recreation Ctr, Inc*, 215 Mich App 561, 571; 546 NW2d 684 (1996). See also *Commercial Union Ins Co v Liberty Mut Ins Co*, 426 Mich 127, 136; 393 NW2d 161 (1986) (insurance); *Green Trust*, 172 Mich App at 315 (applying a similar definition in the trust context). In the governmental-immunity context,

---

involved a receiver's exercise of discretion and business judgment, published Michigan cases do not so clearly require a showing of bad faith in every situation, and none address a situation such as this where the order appointing the receiver specifically provides that the receiver may be liable for gross negligence.

Although the cases PACE discusses may not involve the precise factual situation presented in this case, the *Venus Plaza* Court plainly set forth the applicable standard of care as one of good faith, such that an element of bad faith is required to bring suit against a receiver. *Venus Plaza Shopping Ctr*, 228 Mich App at 360-362.

[5] Although Woods subsequently asserted, in response to PACE's motion for leave to commence suit, that the administrative appeal would not have succeeded in any event because Paris Academy had already forfeited the funds PACE sought to recover, and PACE had no legal standing to claim the withheld monies, his efforts immediately after the deadline passed, in attempting to obtain an extension to file the appeal and filing the late appeal, do not support his assertion on appeal that, *before* the appeal deadline, he "concluded that he lacked sufficient basis to successfully prosecute an administrative appeal."

the Supreme Court has similarly described "a lack of good faith as malicious intent, capricious action or corrupt conduct or willful and corrupt misconduct . . . ," elaborating that good faith is lacking where an individual acts with improper purpose, "maliciously or with a wanton or reckless disregard of the rights of another." *Odom v Wayne Co*, 482 Mich 459, 474; 760 NW2d 217 (2008) (quotation marks, citations, and emphasis omitted). "[C]onsistent with the negation of the common-law definition of 'good faith' " " 'willful misconduct' " is characterized by " 'conduct or a failure to act that was intended to harm the plaintiff,' " while " 'wanton misconduct' " is " 'conduct or a failure to act that shows such indifference to whether harm will result as to be equal to a willingness that harm will result.' " *Id*. at 475, quoting M Civ JI 14.12 and 14.11. Further, *Black's Law Dictionary* defines "bad faith" as "[d]ishonesty of belief, purpose, or motive," elaborating as follows:

> "A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance." [*Black's Law Dictionary* (10th ed), quoting Restatement (Second) of Contracts, § 205, comment *d* (1979).]

As the Supreme Court has explained in the insurance context,

> honest errors of judgment are not sufficient to establish bad faith. Further, claims of bad faith cannot be based upon negligence or bad judgment, so long as the actions were made honestly and without concealment. However, because bad faith is a state of mind, there can be bad faith without actual dishonesty or fraud. If the insurer is motivated by selfish purpose or by a desire to protect its own interests at the expense of its insured's interest, bad faith exists, even though the insurer's actions were not actually dishonest or fraudulent. [*Commercial Union Ins Co*, 426 Mich at 137 (citations omitted).]

Accordingly, negligence does not necessarily indicate bad faith. See *Commercial Union Ins Co v Med Protective Co*, 136 Mich App 412, 423; 356 NW2d 648 (1984) (" 'Bad faith' on the part of the insurer is necessary to sustain an action for breach of the insurer's duty to settle. Negligence is not enough."), aff'd in part and remanded, 426 Mich 109 (1986). "Bad faith is not a specific act in itself, but defines the character or quality of a party's actions." *Green Trust*, 172 Mich App at 315. It "is a state of mind which must be determined from proof of conduct," *Medley v Canady*, 126 Mich App 739, 747; 337 NW2d 909 (1983), and "depends on the facts of the individual case," *Green Trust*, 172 Mich App at 315. Accordingly, the existence of bad faith itself presents a factual issue, *Med Protective Co*, 136 Mich App at 423, which may be determined on the basis of all attendant circumstances, *Detroit Nat'l Bank v Union Trust Co*, 145 Mich 656, 668; 108 NW 1092 (1906). In determining if bad faith exists, "[t]he conduct under scrutiny must be

considered in light of the circumstances existing at the time." *Commercial Union Ins Co*, 426 Mich at 139.[6]

Bearing in mind these definitions, we agree with the trial court that the element of bad faith necessary to bring suit against a receiver was lacking. Woods's inability to timely complete the administrative appeal, without taking sufficient action to preserve that opportunity, such as procuring assistance to help meet the deadline or attempting to obtain an extension *before* the deadline, while knowing that a late appeal would result in the waiver of his right to challenge the audit reports, suggests that Woods did not exercise reasonable care or diligence in pursuing the appeal and thus acted with some measure of carelessness.[7] However, the facts of record do not suggest that Woods was acting out of malice or ill will, or with harmful intent, dishonest purpose, self-interest, or any other improper motive characteristic of bad faith, when he missed the appeal deadline. Rather, the record reveals that Woods went to great lengths to preserve Paris Academy's opportunity to appeal the audit reports, but that, despite his efforts under challenging circumstances, was unable to complete the administrative appeal by the agreed-upon 20-day deadline. Standing alone, Woods's conduct in failing to seek an extension before the appeal deadline expired, underestimating the time it would take to review the apparently voluminous data involved, misjudging when MDE would provide him the requested records that he allegedly needed to complete the appeal, possibly miscalculating the due date, or misjudging MDE/SPI's willingness, or lack thereof, to permit him more time to submit the appeal, appear to be nothing more than honest errors of judgment. But, as noted, errors of judgment are not sufficient to establish bad faith. See *Commercial Union Ins Co*, 426 Mich at 137; *Venus Plaza Shopping Ctr*, 228 Mich App at 361-362. Woods's apparent carelessness in pursuing the appeal did not indicate that he arbitrarily or intentionally refused to act, acted with indifference in the matter, or otherwise showed a willingness to forgo that opportunity. Because bad faith requires more than negligence, we conclude that the trial court did not abuse its discretion by denying PACE's motion for leave to commence suit against Woods for the reason that PACE failed to show that Woods acted with an element of bad faith.

---

[6] On the other hand, "gross negligence" is defined under the governmental immunity statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results" to the aggrieved party. *Xu v Gay*, 257 Mich App 263, 269; 668 NW2d 166 (2003) (quotation marks and citation omitted). See also M Civ JI 14.10; MCL 691.1407(8)(a) (from the governmental tort liability act). It is the failure "to exercise the degree of care that even a careless individual would employ under the circumstances." *St Onge v Detroit & Mackinac R Co*, 116 Mich App 128, 131-132; 321 NW2d 865 (1982) (quotation marks and citation omitted). Similarly, *Black's* defines "gross negligence" as "[a] lack of even slight diligence or care," or "[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party . . . ." *Black's Law Dictionary* (10th ed), p 1197. In contrast, ordinary negligence is the failure to use ordinary care that a reasonably careful person would use under the circumstances. See M Civ JI 10.02.

[7] See *Coleman v Gurwin*, 443 Mich 59, 63 n 5; 503 NW2d 435 (1993) (an attorney owes a "duty to use and exercise reasonable skill, care, discretion and judgment") (quotation marks and citation omitted).

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado