# STATE OF MICHIGAN

# COURT OF APPEALS

---

AUTO-OWNERS INSURANCE COMPANY,

        Plaintiff-Appellant,

v

CAMPBELL-DUROCHER GROUP PAINTING
AND GENERAL CONTRACTING, LLC, JACK
CAMPBELL, and CARRIE CAMPBELL,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

CITY OF ADRIAN and ADRIAN DESIGN
GROUP, PLC,

        Third-Party Defendants.

UNPUBLISHED
October 12, 2017

No. 331384
Lenawee Circuit Court
LC No. 13-004900-CK

---

CAMPBELL-DUROCHER GROUP PAINTING
AND GENERAL CONTRACTING, LLC,

        Plaintiff-Appellee,

v

CITY OF ADRIAN,

        Defendant-Appellant,

and

ADRIAN DESIGN GROUP, PLC,

        Defendant.

No. 331389
Lenawee Circuit Court
LC No. 13-004646-CK

---

AUTO-OWNERS INSURANCE COMPANY,

-1-

Plaintiff,

v

CAMPBELL-DUROCHER GROUP PAINTING
AND GENERAL CONTRACTING, LLC, JACK
CAMPBELL, and CARRIE CAMPBELL,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

CITY OF ADRIAN,

        Third-Party Defendant-Appellant,

and

ADRIAN DESIGN GROUP, PLC,

        Third-Party Defendant.

No.  331802
Lenawee Circuit Court
LC No.  13-004900-CK

---

PULLUM WINDOW CORPORATION,

        Plaintiff,

v

JACK CAMPBELL, CARRIE CAMPBELL, and
CAMPBELL-DUROCHER GROUP PAINTING
AND GENERAL CONTRACTING, LLC,

        Defendants/Third-Party Plaintiffs-
        Appellees,

and

AUTO-OWNERS INSURANCE COMPANY,

        Defendant,

and

No.  331803
Lenawee Circuit Court
LC No.  14-004948-CK

CITY OF ADRIAN,

        Third-Party Defendant-Appellant,

and

ADRIAN DESIGN GROUP, PLC,

        Third-Party Defendant.

---

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

In these consolidated cases, Auto-Owners Insurance Company ("Auto-Owners") and the City of Adrian ("the City") appeal by leave granted the trial court's order denying their respective motions for summary disposition. Auto-Owners sought summary disposition regarding its claims for indemnification from appellees, Campbell-Durocher Group Painting and General Contracting, LLC ("Campbell Durocher"), Jack Campbell, and Carrie Campbell.[1] The City sought summary disposition relating to the Campbells' claims for breach of contract. For the reasons explained in this opinion, we affirm the trial court's denial of the City's motion, reverse the trial court's denial of Auto-Owners' motion, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

These appeals arise from a restoration project in the City of Adrian that went awry. The City received a grant to fund a downtown historic facade restoration project ("the project"), involving five downtown buildings. Campbell-Durocher was the successful bidder as general contractor on the project, and a "Building Contract" between the City and Campbell-Durocher was entered into on August 12, 2009. Pursuant to the requirements of MCL 129.201 *et seq.,* a public works bonding act, Campbell-Durocher provided payment and performance bonds with itself as principal and Auto-Owners as surety. In relation to the bonds, an "Indemnity Agreement" was entered into between Campbell-Durocher and Auto-Owners.

According to the Building Contract, the agreement was scheduled to expire on December 19, 2009. The project was not completed by that date. However, several "change orders" were approved by the parties that provided for "completion dates" well beyond December 19, 2009. Notably, before the contract expired, a change order relating to storefront windows and doors was signed, which required "substantial completion" by May 13, 2010. Due to various issues relating to the windows and doors, the project was also not completed by May 13, 2010.

---

[1] When appropriate, Campbell-Durocher, Jack Campbell, and Carrie Campbell will be referred to collectively as "the Campbells."

On August 24, 2010, the City ordered Campbell-Durocher off the job site. In correspondence dated August 26, 2010, the City stated: "The City of Adrian has terminated the contract with Campbell-Durocher Group as of August 24, 2010." As reasons for this decision, the City noted that Campbell-Durocher failed to complete the project on schedule, failed to pay a supplier, and failed to offer an acceptable solution to the storefront window and door issue.

As a result of the non-completion of the project, the City filed a written bond claim with Auto-Owners. On September 21, 2011, Auto-Owners settled the City's bond claim for approximately $127,000. Auto-Owners also paid approximately $62,000 on a bond claim to ABC Supply Company, an unpaid supplier for the project.

The project resulted in the three lawsuits underlying this appeal, which were eventually consolidated in the trial court. Although there were other entities named in the complaints, relevant to this appeal, Auto-Owners sought reimbursement from the Campbells for amounts paid on the bond, totaling $189,277.64, as well as other costs incurred by Auto-Owners, including attorney fees. Also relevant to this appeal, the Campbells alleged that the City breached the Building Contract by failing to pay $59,623.97 for work performed by the Campbells and by terminating the contract in August 2010 without providing 90 days' notice as required under section 2.2 of the contract.

Several motions for summary disposition were filed by various parties, including motions by the City and Auto-Owners which are at issue in this appeal. The City moved for summary disposition under MCR 2.116(C)(8) and (C)(10), contending that the Building Contract terminated on December 19, 2009 or, at the latest, on May 13, 2010. Based on the assertion that the contract had expired, the City argued that it did not breach the contract by terminating the Campbells in August of 2010 without providing 90 days' notice. In comparison, relying on MCR 2.116(C)(9) and (C)(10), Auto-Owners argued that summary disposition was proper because the unambiguous terms of the Indemnification Agreement entitled Auto-Owners to indemnification from the Campbells for all "bond losses."

The trial court denied the motions, stating, without any elaboration, "that there are still issues of fact and law that need to be brought before this Court." The City and Auto-Owners moved for reconsideration, which the trial court denied. The City filed applications for leave to appeal to this Court in each of the three lawsuits (Docket Nos. 331389, 331802, and 331803),[2] and Auto-Owners filed an application for leave to appeal in its action for indemnification (Docket No. 331384). This Court granted the applications and consolidated the four appeals.[3]

---

[2] The Campbells' breach of contract claim against the City is at issue in all three cases. In one of the cases, the Campbells filed a breach of contract claim against the City. In the other two cases, the Campbells filed third-party complaints against the City, alleging breach of contract.

[3] *Auto-Owners Ins Co v Campbell-Durocher Group*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket Nos. 331384, 331802); *Campbell-Durocher Group v City of Adrian*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket No. 331389);

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). While the parties cited MCR 2.116(C)(8), (C)(9) and (C)(10), they relied on evidence outside the pleadings. Consequently, we will review their motions under MCR 2.116(C)(10). *Siberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). A genuine issue of material fact exists when "reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. AUTO-OWNERS' APPEAL

On appeal, Auto-Owners argues that the trial court erred when it denied summary disposition on its contractual indemnification claim. According to Auto-Owners, the express terms of the Indemnity Agreement required the Campbells to indemnify Auto-Owners for all losses incurred by reason of execution of the bonds. Auto-Owners asserts that the payment of the bond claims by Auto-Owners is prima facie evidence of the Campbells' liability and that the Campbells have failed to offer any evidence that Auto-Owners paid the bond claims in bad faith.

An indemnity contract is interpreted in accordance with the rules of construction that govern any other type of contract. *Ajax Paving Indus, Inc v Vanopdenbosch Const Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010). Accordingly, "[u]nder ordinary contract principles, if contractual language is clear, construction of the contract is a question of law for the court." *Meagher v Wayne State Univ*, 222 Mich App 700, 721; 565 NW2d 401 (1997).

> This Court's main goal in the interpretation of contracts is to honor the intent of the parties. The words used in the contract are the best evidence [of] the parties' intent. When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent. [*Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 446; 886 NW2d 445 (2015) (internal citations and quotation marks omitted.]

"A contract of indemnity should be construed so as to cover all losses, damages, or liabilities to which it reasonably appears to have been the intention of the parties that it should apply . . . ." *Title Guaranty & Surety Co v Roehm*, 215 Mich 586, 592; 184 NW 414 (1921) (citation omitted).

In this case, the Indemnity Agreement specifically obligated the Campbells to:

---

*Pullum Window Corp v Campbell*, unpublished order of the Court of Appeals, entered June 2, 2016 (Docket No. 331803).

indemnify [Auto-Owners] against all loss, costs damages, expenses and attorneys fees whatever, and any and all liability therefor, sustained or incurred by [Auto-Owners] by reason of executing of said bond or bonds, or any of them, in making any investigation on account thereof, in prosecuting or defending any action brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained[.]

The foregoing language unambiguously required the Campbells to indemnify Auto-Owners for all liability and expenses sustained by reason of the execution of the bonds.

In contesting Auto-Owners' entitlement to reimbursement, the Campbells do not appear to dispute that the indemnity agreement, in general, obligated them to reimburse Auto-Owners for costs incurred pursuant to the bonds. Instead, the Campbells contest whether Auto-Owners properly settled the bond claims. Specifically, they argue that Auto-Owners is not entitled to reimbursement because Auto-Owners acted in bad faith by failing to conduct an investigation into the bond claims. According to the Campbells, had Auto-Owners investigated and consulted with the Campbells, it would have discovered that the City was not entitled to payment on the bond because the City had breached the Building Contract.

Relevant to the Campbells' arguments, the Indemnity Agreement contains several pertinent clauses involving Auto-Owners' right to pay claims and seek reimbursement from the Campbells. Specifically, the Indemnity Agreement provides that Auto-Owners:

shall have the right, and is hereby authorized but not required . . . [t]o adjust, settle, or compromise any claim, demand, suit, or judgment upon said bond or bonds, or any of them, unless the undersigned shall request [Auto-Owners] to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with [Auto-Owners], at the time of such request, cash or collateral satisfactory to it in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs and attorneys' fees . . . .

Additionally, the agreement specifies that the extent of the Campbells' liability under the Indemnity Agreement:

shall extend to, and include, the full amount of any and all sums paid by [Auto-Owners] in settlement or compromise of any claims, demands, suits, and judgments upon said bond or bonds, or any of them, on good faith, under the belief that it was liable therefor, whether liable or not, as well as of any and all disbursements on account of costs, expenses and attorney's fees, as aforesaid, which may be made under the belief that such were necessary, whether necessary or not . . . .

Further, in the event Auto-Owners pays a claim, the agreement contains a clause specifying that "the voucher or vouchers or other evidence of such payment, settlement or compromise shall be prima facie evidence of the fact and extent of the liability of the undersigned, in any claim or suit hereunder, and in any and all matters arising between the undersigned and [Auto-Owners]. . . ."

-6-

Read as a whole, these provisions makes plain that Auto-Owners had the discretion to adjust, settle or compromise, any claim upon the bonds.[4] Further, under the plain terms of the agreement, the Campbells are required to reimburse Auto-Owners, whether or not Auto-Owners was ultimately correct in paying the bond claims, provided that Auto-Owners acted in "good faith." The phrase "good faith" has typically been understood "as a standard measuring the state of mind, perceptions, honest beliefs, and intentions of the parties." *Miller v Riverwood Recreation Ctr, Inc*, 215 Mich App 561, 570; 546 NW2d 684 (1996). "Good faith" refers to "an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage," while "bad faith" refers to an "arbitrary, reckless, indifferent, or intentional disregard of the interests of the person owed a duty," involving something more than honest errors of judgment. *Id.* at 571 (citations omitted). See also *Great Am Ins Co v EL Bailey & Co, Inc*, 841 F3d 439, 446 (CA 6 2016).

Notably, under the terms of their agreement, evidence that Auto-Owners paid a claim is "prima facie evidence" of the Campbells' liability and the extent of that liability. The phrase "prima facie evidence" refers to "evidence which, if not rebutted, is sufficient by itself to establish the truth of a legal conclusion asserted by a party." *Am Cas Co v Costello*, 174 Mich App 1, 7; 435 NW2d 760 (1989). The effect of prima facie evidence is to shift the burden of proof such that the opposing party must come forward with evidence to rebut or contradict its liability. *P R Post Corp v Maryland Cas Co*, 403 Mich 543, 552; 271 NW2d 521 (1978). More specifically, in the context of indemnifying a surety, when payment of a bond claim serves as prima facie evidence of liability, the indemnitor disputing liability has the burden of proving that the surety acted in bad faith or otherwise violated the indemnity agreement. See *Gray Ins Co v Terry*, 606 Fed App'x 188, 191 (CA 5 2015); *Travelers Cas & Sur Co of Am v Winmark Homes, Inc*, 518 Fed App'x 899, 903 (CA 11 2013); *Fallon Elec Co, Inc v Cincinnati Ins Co*, 121 F3d 125, 128-129 (CA 3 1997). Such clauses are enforceable. *Transamerica Ins Co v Bloomfield*, 401 F2d 357, 363 (CA 6 1968).

In this case, Auto-Owners presented proof that it paid the City and ABC, and these payments constitute prima facie evidence of the Campbells' liability and the extent of that liability under the Indemnity Agreement. Thus, if the Campbells wish to contest their liability, they bear the burden of proving that Auto-Owners failed to act in good faith or otherwise violated the Indemnity Agreement. Given that they bear this burden, in responding to Auto-Owners' motion for summary disposition under MCR 2.116(C)(10), they could not simply "rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The Campbells have not presented specific facts

---

[4] While the Campbells could request that Auto-Owners litigate a claim, if they wished to do so, under the Indemnity Agreement, the Campbells would have to make a request and they would be required to deposit cash or collateral with Auto-Owners. The Campbells were notified that the City had made a bond claim, however, there is no evidence that the Campbells requested that Auto-Owners litigate the bond claim or that they deposited cash or collateral with Auto-Owners. As such, Auto-Owners had the discretion, under the Indemnity Agreement to pay the claim.

showing that a question of fact exists as to whether Auto-Owners acted in bad faith. At best, the Campbells have established that Auto-Owners exercised business judgment with which they disagreed.

For instance, contrary to the Campbells assertion that Auto-Owners paid the claims without investigating or consulting with the Campbells, by correspondence dated November 24, 2010, in addition to reiterating that bond claims had been made, Auto-Owners advised the Campbells that they were personally responsible for fully indemnifying Auto-Owners for costs and expenses related to the losses in connection with the bonded project. Auto-Owners also requested that the Campbells contact Auto-Owners to discuss the matter, stating in the correspondence: "Please contact the undersigned as to how you intend to address this matter which appears to be well in excess of $100,000. Your immediate attention to this matter is essential." There is no evidence that the Campbells contacted Auto-Owners regarding the bond claims. Also noteworthy, Jack Campbell has admitted that ABC Supply was owed monies on the project. In addition, the City provided documentation to Auto-Owners—a punch list itemizing the outstanding items yet to be completed and the costs related thereto. While the Campbells make the bald assertion that the bond claims were settled by Auto-Owners in bad faith, and that an issue of fact existed related to the good faith of Auto-Owners' payments, they did not come forward with any evidence to create a genuine issue of fact in this regard. Accordingly, the trial court erred when it denied Auto-Owners' motion for summary disposition.

## IV. THE CITY'S APPEAL

The Campbells' complaint alleges that the original contract required payment for its services in the amount of $224,920, but that as a result of the change orders, $391,155.27 was the amount owed. The Campbells acknowledge that they were paid $331,531.30, but allege in their complaint that $59,623.97 is still due. The Campbells also allege that pursuant to section 2.2 of the contract, the City breached the contract by failing to give 90 days' written notice prior to termination and that because they were not given this notice, they were not allowed to complete the project and they are entitled to damages resulting from this termination without notice.

In moving for summary disposition, the City's sole argument was that the City did not breach the contract by terminating the Campbells without notice because, when the City terminated the Campbells in August of 2010, the contract had long expired and the City was not bound by the 90-day notice provision. This argument is flawed for two reasons. First, fairly read, the Campbells' complaint sought payment for $59,623.97 worth of work that they allegedly completed before they were terminated in August of 2010. Whether or not the 90 day provision applied is not dispositive of whether the Campbells were entitled to payment for supplies and work actually performed before termination.

Second, to the extent that the Campbells sought damages resulting from termination without 90 days' notice, it appears that a question of fact remains as to whether this provision was in effect in August of 2010. In particular, in terms of the written agreement, the original contract provided for an expiration date of December 19, 2009, and a change order modified this expiration date by providing a substantial completion date of May 13, 2010. However, the Campbells maintain that there was an implied contract to extend the agreement beyond the May 13, 2010 completion date. After an agreement has expired, an implied contract may arise when

the parties continue to perform as before and their conduct demonstrates an intent to enter into an agreement to measure their rights and obligations as provided in the expired contract. 17A Am Jur 2d Contracts § 576.

> A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. . . . The existence of an implied contract, of necessity turning on inferences drawn from given circumstances, usually involves a question of fact, unless no essential facts are in dispute. [*Erickson v Goodell Oil Co*, 384 Mich 207, 212; 180 NW2d 798 (1970).]

In this case, there is evidence that, even after May 13, 2010, the Campbells and the City continued to do business together with the Campbells continuing to act as general manager for the project. For instance, there is correspondence to the Campbells, dated after May 13, 2010, discussing the windows, scheduling, and items yet to be completed. Even the City's termination letter to the Campbells, terminating "the contract" as of August 24, 2010, could be read to support the proposition that the parties were still mutually operating under the terms of the written agreement, which would include the 90 days' notice provision.

Considering the foregoing, questions of fact existed with respect to whether the 90 day notice provision was in effect and whether the Campbells were entitled to additional compensation for services rendered. Accordingly, the trial court did not err when it denied the City's motion for summary disposition as to the Campbells' breach of contract claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly