# STATE OF MICHIGAN

# COURT OF APPEALS

BERNADEAN BOULWARE,

       Plaintiff-Appellant,

and

PAIN CENTER USA, PLLC, and
INTERNATIONAL PAIN CENTER, PLLC,

       Intervening Plaintiffs,

v

DAVID JAMES GUTSUE, HEIDI LOUISE
GUTSUE, and ALLSTATE INSURANCE
COMPANY,

       Defendants-Appellees.

UNPUBLISHED
December 18, 2018

No. 339355
Wayne Circuit Court
LC No. 16-006089-NI

Before: CAVANAGH, P.J., and SERVITTO and CAMERON, JJ.

PER CURIAM.

Plaintiff, Bernadean Boulware, appeals[1] an order granting the motion for summary disposition of defendants David James Gutsue and Heidi Louise Gutsue (collectively defendants) in this no-fault insurance action. We affirm.

This action arises out of alleged injuries sustained by plaintiff when David rear-ended plaintiff's vehicle. Plaintiff was stopped at a stoplight on Woodward when she was rear-ended. The speed limit was 30 miles per hour, and the collision caused plaintiff's vehicle to hit the back of the vehicle that was stopped in front of her. Plaintiff's "chest hit the steering wheel," and her right knee "hit the front of the car down at the bottom." The airbags, however, did not deploy.

---

[1] *Boulware v Gutsue*, unpublished order of the Court of Appeals, entered December 19, 2017 (Docket No. 339355).

-1-

Immediately after the accident, plaintiff, who was 61 years old at the time, exited her vehicle, inspected the vehicle for damage, and spoke to the woman she rear-ended after being pushed forward by defendants' vehicle. Plaintiff then returned to her vehicle and waited for her husband. Plaintiff declined the police officer's offer to call an ambulance, informing the officer that she would have her husband take her to the hospital. Once plaintiff's husband arrived, plaintiff drove her vehicle home while her husband followed in his vehicle. Her husband then drove plaintiff to the hospital, where she complained of pain in her back, shoulders, neck, and knee.

Plaintiff commenced a first-party and third-party lawsuit against Allstate Insurance Company and defendants. On February 23, 2017, defendants filed a motion for summary disposition under MCR 2.116(C)(10), arguing there was no genuine issue of material fact that the car accident did not cause plaintiff's injuries, and no genuine issue of material fact that plaintiff did not suffer a serious impairment of an important body function as a result of the accident. The trial court concluded that plaintiff failed to "show an objective manifestation of impairment to an important body function that has an effect on her general ability to lead her normal life."

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary disposition because there was a genuine issue of material fact regarding whether she suffered a serious impairment of body function after a car accident between plaintiff and defendants.[2] We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id*. (citation omitted). There is a genuine issue of material fact "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Id*. (citation omitted).

Michigan's no-fault insurance statute limits tort liability. *Patrick v Turkelson*, 322 Mich App 595, 606; 913 NW2d 369 (2018). Pursuant to MCL 500.3135(1), "[a] person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Plaintiff argues that the May 20, 2015 motor vehicle accident caused her "serious impairment of body function."

A " 'serious impairment of body function' means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). In order to prove a serious impairment of body function a plaintiff must demonstrate: "(1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value,

---

[2] Plaintiff conceded that causation was not actually an issue. Thus, causation will not be discussed herein.

significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living)." *McCormick v Carrier*, 487 Mich 180, 215; 795 NW2d 517 (2010). Whether an individual "has suffered serious impairment of body function" is a question of law to be decided by the trial court if either "[t]here is no factual dispute concerning the nature and extent of the person's injuries," or there is a factual dispute, "but the dispute is not material to the determination [of] whether the person has suffered a serious impairment of body function." MCL 500.3135(2)(a). The trial court determined that plaintiff was unable to establish the first prong, and, thus, granted defendants Gutsues' motion for summary disposition.

An "objectively manifested impairment is one 'that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function.' " *Turkelson*, 322 Mich App at 606, quoting *McCormick*, 487 Mich at 196. What is important is " 'whether the *impairment* is objectively manifested, not the *injury* or its symptoms.' " *Turkelson*, 322 Mich App at 606, quoting *McCormick*, 487 Mich at 197. Impairment is defined as "the state of being impaired." *Turkelson*, 322 Mich App at 606-607 (quotation marks and citation omitted). And "impaired means the state of (1) being weakened, diminished, or damaged or (2) functioning poorly or inadequately." *Id*. at 607 (quotation marks and citation omitted). "[M]ere subjective complaints of pain and suffering are *insufficient* to show impairment." *Id*. (emphasis added). However, "evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Id*. Typically, medical evidence is needed "to make this showing." *Id*.

Ultimately, plaintiff did not provide any evidence demonstrating an objectively manifested impairment. Almost immediately after the accident, plaintiff went to St. John Hospital where CT scans of plaintiff's cervical spine and head showed no injuries attributable to the accident, only changes in her medical condition attributable to degenerative conditions or aging. X-rays of plaintiff's right knee and chest also failed to show plaintiff suffered any injuries as a result of the accident. An MRI report of plaintiff's right shoulder only indicated plaintiff had "[m]ild to moderate subacromial /subdeltoid bursitis." Plaintiff argues that "[b]ursitis can be caused by trauma." This may be true, however, both this Court and the Michigan Supreme Court have stated that the inquiry must be " 'whether the *impairment* is objectively manifested, not the *injury* or its symptoms.' " *Turkelson*, 322 Mich App at 606, quoting *McCormick*, 487 Mich at 197. In other words, "while an injury is the actual damage or wound, an impairment generally relates to the effect of that damage." *McCormick*, 487 Mich at 197. The MRI of plaintiff's right shoulder showed an injury, rather than an impairment. The doctors who examined plaintiff after the accident could not observe plaintiff's alleged impairments, and plaintiff did not provide affidavits or depositions from other individuals in plaintiff's life who had observed an impairment. See *Turkelson*, 322 Mich App at 609, citing *McCormick*, 487 Mich at 196-198 (stating that an impairment that is "observable by others" meets "the standard for showing an 'objectively manifested impairment' ").

Dr. May Antone, plaintiff's primary care physician who had treated plaintiff before the accident, acknowledged that "there [was] not much of a change in [plaintiff's] physical examination" after the accident, and that she had to rely on plaintiff's "subjective symptoms." Before the accident, plaintiff had "a lot of limitation[s] with her physical ability," including issues with walking and standing. According to plaintiff's medical documentation, she had a

history of arthritis. About a week after the accident, Dr. Antone observed that plaintiff exhibited some "[d]ecreased range of motion in both shoulders," which Dr. Antone attributed to "a soft tissue injury."

About six months after the accident, Dr. Asit Ray examined plaintiff for the defense, and Dr. Ray noted that he "did not find any objective evidence to substantiate [plaintiff's] subjective complaint[s] of pain as a result of the auto accident." When Dr. Jeffrey Carroll examined plaintiff for the defense about a year after the accident, he did not observe any physical evidence of injury to plaintiff's shoulder, and noted that plaintiff had "[f]ull active and passive range of motion," but that plaintiff experienced pain when moving her shoulder. According to Carroll, plaintiff's symptoms were related to degenerative disc and joint disease, and she exhibited no limitations concerning movement in her back, shoulders, or knee. Dr. Ruth Ramsey also concluded, upon reviewing multiple MRIs and an earlier CT scan of plaintiff's spine, that plaintiff suffered from degenerative changes of the cervical spine—not post-traumatic changes. In April 2017, Dr. Harry Sukumaran concluded that any sprains or strains had resolved with treatment and any current complaints were related to preexisting conditions, including degenerative changes of the spine. In fact, plaintiff's own orthopedic spine surgeon, Dr. Martin Kornblum, did not conclude that plaintiff's complaints of back, shoulder, and knee pain were related to the accident, instead concluding that the MRIs showed "some internal worsening" and "some baseline spondylosis," but "nothing that is causing any significant canal stenosis." Dr. Kornblum also noted lumbar facet arthritis in December 2016.

In sum, plaintiff did not demonstrate that she suffered an objectively manifested impairment. Plaintiff's subjective complaints of pain are insufficient to show impairment, *Turkelson*, 322 Mich App at 607, and plaintiff's own primary care physician testified that there was no objective evidence to substantiate plaintiff's complaints. Further, multiple doctors concluded that the MRIs and CT scans indicated degenerative changes—just like the initial findings directly after the accident. Moreover, those doctors who conducted physical examinations only noted plaintiff's complaints of pain, not long-lasting impairments attributable to plaintiff's injuries. Therefore, we hold that the trial court did not err when it concluded that plaintiff failed to satisfy the first prong of the *McCormick* test. As such, we need not discuss the second and third prongs.

In her brief on appeal, plaintiff argues the trial court erred when it failed to consider evidence that plaintiff presented for the first time when she submitted her motion for reconsideration, and when it failed to consider plaintiff's argument that she was entitled to relief from judgment because of newly discovered evidence. Plaintiff did not present this argument in her application for leave to appeal. Under MCR 7.205(E)(4), an "appeal is limited to the issues raised in the application and supporting brief." MCR 7.205(E)(4). See also *Boulware v Gutsue*, unpublished order of the Court of Appeals entered December 19, 2017 (Docket No. 339355). Accordingly, this Court will not consider plaintiff's arguments concerning the motion for reconsideration and relief for judgment because of newly considered evidence.

Thus, because plaintiff failed to demonstrate she had an objectively manifested impairment as a result of the accident, the trial court did not err when it granted defendants' motion for summary disposition as there was no genuine issue of material fact regarding whether the car accident caused plaintiff a serious impairment of body function.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto
/s/ Thomas C. Cameron