*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KENNETH LONEY and FAITH CRAWFORD-LONEY,

        Plaintiffs-Appellants,

v

STEVEN T. SLEEVA and DONALD PARKER,

        Defendants,

and

GEICO INDEMNITY COMPANY,

        Defendant-Appellee.

UNPUBLISHED
January 16, 2020

No. 345655
Wayne Circuit Court
LC No. 16-013693-NI

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendant, Geico Indemnity Company (Geico), pursuant to MCR 2.116(C)(10) with respect to plaintiffs' claims for underinsured motorist coverage under their no-fault insurance policy with Geico. We affirm.

## I. FACTS

Plaintiffs purchased a no-fault insurance policy from Geico in 2013. Plaintiffs requested the same coverage that they had under their former policy with another insurer, which included both uninsured motorist (UM) liability coverage and underinsured motorist (UIM) liability coverage. Plaintiffs allege that Geico's agents orally informed them that its policy provided the same coverage, including both UM and UIM coverage. The declarations page for the policy issued by Geico stated that it provided UM coverage with a limit of $250,000 per person and $500,000 per occurrence. The policy also provided the following definition of "uninsured auto":

-1-

**Uninsured auto** is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident. This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term **uninsured auto** does not include:

(a) An **insured auto** . . . .

The policy also contained a merger clause that states: "This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally." Plaintiffs continued to renew Geico's policy every six months and the policy was in effect in January 2016, when plaintiffs were involved in an auto accident.

On January 24, 2016, plaintiffs' vehicle was struck from behind by a vehicle owned and operated by defendant Steven Sleeva. Plaintiffs brought a third-party action against Sleeva, alleging that they sustained serious impairment of body functions or permanent serious disfigurement in the accident, MCL 500.3135. Sleeva was insured under a no-fault policy, but his policy provided only the statutory minimum limits of liability coverage of $20,000 per person and $40,000 per accident. MCL 257.520b(2); MCL 500.3009(1). After the accident, plaintiffs contacted Geico regarding UIM coverage. Geico's agents orally informed plaintiffs in recorded telephone calls that UM and UIM coverages were combined in the policy. However, Geico subsequently denied that its policy provided UIM coverage. In an amended complaint, plaintiffs brought claims against Geico to recover UIM benefits under theories of breach of contract, promissory estoppel, fraud, and negligent misrepresentation.

Plaintiffs stipulated to dismiss their claims against Sleeva in exchange for payment of the policy limits under Sleeva's policy. Geico filed a motion for summary disposition with respect to plaintiffs' claims for UIM coverage. The trial court ruled that Geico's policy was not ambiguous and did not provide UIM coverage, and that plaintiffs could not rely on theories of promissory estoppel, fraud, or negligent misrepresentation to obtain this coverage. Accordingly, the court granted Geico's motion pursuant to MCR 2.116(C)(10). This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Maurer v Fremont Ins Co*, 325 Mich App 685, 707; 926 NW2d 848 (2018) (quotation marks and citation omitted). Issues concerning the interpretation of an insurance policy, including whether contract language is ambiguous, are also reviewed de novo.

*Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 713-714; 706 NW2d 426 (2005).

## III. BREACH OF CONTRACT

Plaintiffs argue that the trial court erred by ruling that the Geico insurance policy was not ambiguous and by ignoring extrinsic evidence that showed that UIM coverage was intended to be included within the scope of UM coverage available under the policy. We disagree.

"The Insurance Code has various requirements detailing the benefits that Michigan automobile insurance policies must provide . . . ." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 399; 919 NW2d 20 (2018). However, "[n]either uninsured motorist (UM) coverage nor UIM coverage is required by Michigan law, and therefore the terms of coverage are controlled by the language of the contract itself, not by statute." *Andreson v Progressive Marathon Ins Co*, 322 Mich App 76, 84; 910 NW2d 691 (2017) (quotation marks and citation omitted). Insurance policies are contracts and are subject to the same contract construction principles that apply to any other species of contract. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005). "The primary rule in contract interpretation is to ascertain the parties' intent." *Gurski v Motorists Mut Ins Co*, 321 Mich App 657, 666; 910 NW2d 385 (2017). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written because an unambiguous contract reflects the parties' intent as a matter of law." *Id*. Courts must "read the policy as a whole, giving meaning to each term and giving each term its plain and ordinary meaning." *Wagner v Farm Bureau Mut Ins Co of Mich*, 321 Mich App 251, 258; 908 NW2d 327 (2017). "When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent." *Auto-Owners Ins Co v Campbell-Durocher Group Painting and Gen Contracting, LLC*, 322 Mich App 218, 225; 911 NW2d 493 (2017). "[C]ourts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003).

The Geico policy is unambiguous. The declarations page states that it provides UM coverage to the limit of $250,000 per person and $500,000 per occurrence, but it does not state that it provides UIM coverage. Moreover, the policy's definition of "uninsured auto" expressly states that the term does *not* include "[a]n insured auto . . . ." Thus, the policy cannot be read as allowing the UM coverage to apply to an insured auto that is underinsured. Plaintiffs argue that the policy is ambiguous because it does not contain a definition of "underinsured" motorist, but it excludes punitive and exemplary damages from "underinsured" coverage. Plaintiffs' argument implies that an exclusion in an insurance policy can create a category of coverage, in this case UIM coverage, that is otherwise omitted in the policy, by stating that the exclusion applies to the omitted category as well as the included categories. "[E]xclusionary clauses limit the scope of coverage provided under the insurance contract; they do not grant coverage." *Hawkeye-Security Ins Co v Vector Constr Co*, 185 Mich App 369, 384; 460 NW2d 329 (1990). Disavowing punitive damages for both UM and UIM coverage does not create UIM coverage that was not provided in the policy.

Plaintiffs argue that Geico's online statement describing "uninsured coverage" as coverage "for injuries caused by motorists who don't carry sufficient coverage for the extent of your damages" should be consulted in order to construe the intended meaning of UM coverage within the policy. However, the online statement is extrinsic evidence that cannot be considered to alter the terms of the policy because the policy is not ambiguous. Plaintiffs' reliance on an online claim form that includes a section for UM and UIM benefits is similarly misplaced because it too is extrinsic evidence. Because the policy is not ambiguous and there is no genuine issue of fact regarding whether the terms of the policy provide for UIM coverage, the trial court properly granted summary disposition for Geico with respect to plaintiffs' claim for breach of contact.

IV. PROMISSORY ESTOPPEL, FRAUD, AND NEGLIGENT MISREPRESENTATION

Plaintiffs next argue that the trial court erred by also granting summary disposition for Geico with respect to their claims for promissory estoppel, fraud, and negligent misrepresentation. We disagree.

"In order to invoke promissory estoppel, the party relying on it must demonstrate that (1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) the promise must be enforced to avoid injustice." *Crown Tech Park v D&N Bank, FSB*, 242 Mich App 538, 548-549; 619 NW2d 66 (2000). "A promise is a manifestation of intention to act or refrain from acting in a specific way, so made as to justify a promise in understanding that a commitment has been made." *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 41; 761 NW2d 151 (2008) (quotation marks and citation omitted). "We are to exercise caution in evaluating an estoppel claim and should apply the doctrine only where the facts are unquestionable and the wrong to be prevented undoubted." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 687; 599 NW2d 546 (1999).

"[W]hen an insurance agent elects to provide advice regarding coverage and policy limits, the agent owes a duty to exercise reasonable care. The insured has a duty to read its insurance policy and to question the agent if concerns about coverage emerge." *Zaremba Equip*, 280 Mich App at 36. "[T]he law applied in Michigan leaves no room to doubt that as a general rule, an insured must read his or her insurance policy." *Id*. at 29. "This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Id*.

Geico's declarations page indicated that plaintiffs had only UM coverage, not UIM coverage, and the written policy's definition of "uninsured auto" expressly excluded insured autos. Consequently, it was not reasonable for plaintiffs to rely on Geico's agents' oral representations that the policy included UIM coverage. Plaintiffs received their first written policy in 2013, and they periodically renewed it until the time of their accident in January 2016. Accordingly, there is no genuine issue of material fact that plaintiffs had a reasonable opportunity to review the policy and should have been aware that it did not provide UIM coverage. Thus, they could not reasonably continue to rely on any prior oral statements to expand the scope of coverage unambiguously stated in the policy. For this reason, plaintiffs' fraud claim fails. *Barclae v Zarb*, 300 Mich App 455, 476; 834 NW2d 100 (2013) ("[c]ommon-

-4-

law fraud or fraudulent misrepresentation entails a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result" and "[a] claim for negligent misrepresentation requires plaintiff to prove that a party justifiably relied to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care").

Additionally, plaintiffs' claim of negligent misrepresentation fails because plaintiffs' evidence does not establish that Geico's agent undertook any duty by going beyond presenting the product and taking plaintiffs' order. *Zaremba Equip*, 280 Mich App 16 (an insurance agent whose principal is the insurance company owes no duty to advise a potential insured about any coverage because the agent's job consists merely of presenting the product of his principal and taking orders as can be secured from those who want to purchase the coverage offered). Viewing the evidence in a light most favorable to plaintiffs, Geico's agents orally informed plaintiffs that Geico's policy provided the same coverage that plaintiffs had with their prior insurer, including UIM coverage. Moreover, even if Geico's agents negligently misrepresented that its policy provided the same coverage that plaintiffs had under their old policy, once plaintiffs received the written policy and had a reasonable time to review it, they should have discovered that it unambiguously did not provide UIM coverage. Thus, they were not justified in continuing to believe that the policy provided UIM coverage, particularly when they continued to renew the policy thereafter. Consequently, Geico was entitled to summary disposition with respect to plaintiffs' claim for negligent misrepresentation.

## V. FRAUD IN THE INDUCEMENT

Plaintiffs argue that the merger clause in Geico's policy is voidable because Geico induced them to purchase the policy through fraud. Fraud in the inducement occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon and renders a contract voidable at the option of the defrauded party. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242; 733 NW2d 102 (2006); *Bazzi*, 502 Mich at 408. However, as explained above, plaintiffs' claims are invalid regardless of the merger clause.

## VI. EVIDENCE CONSIDERED IN SUMMARY DISPOSITION

Plaintiffs also argue that the trial court's decision to grant Geico's motion for summary disposition was based on improper considerations and an improper assessment of the credibility of plaintiffs and the agents they spoke to. Plaintiffs rely on the following remarks by the trial court at the hearing on Geico's motion:

> *THE COURT.* But there's no, I guess I should ask, there's no phone calls before --
>
> *[PLAINTIFF'S COUNSEL].* No, Your Honor, there's no phone calls before, but the –

*THE COURT.* And your guy is an insurance guy, right?

*[PLAINTIFF'S COUNSEL].* Right, but I believe that goes to –

*THE COURT.* Not only an insurance guy, but a guy kind of high up that does claims and --

*[PLAINTIFF'S COUNSEL].* Your Honor, I don't believe that's an appropriate consideration for summary disposition.

\* \* \*

*[PLAINTIFF'S COUNSEL].* I mean if you call GEICO, called them right now they'd probably tell us it includes underinsured coverage.

*THE COURT.* Some lady on, some minimum wage --

It is well-established that in deciding a motion for summary disposition under MCR 2.116(C)(10), "[t]he trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013). However, the trial court's remarks were extraneous to its legal analysis. The court acknowledged that it was "troubled by the after-the-fact phone calls," but it concluded that the calls do not "change the terms of the policy." The court also acknowledged that "probably 99.9% of people don't" read their policies, but it correctly observed that "the law in Michigan doesn't permit an insured to make a recovery of benefits based upon his or her assumption that their policy contained a non-existent coverage." These statements indicate that the trial court's decision was based on legal principles of elevating clear and unambiguous policy language over an insured's subjective beliefs. The trial court did not determine that plaintiffs' evidence was unworthy of belief, but that it was ineffective to support plaintiffs' claims.

V.  CONCLUSION

The trial court properly granted summary disposition pursuant to MCR 2.116(C)(10). Plaintiffs' breach of contract claim fails because the Geico policy was not ambiguous and did not provide for UIM coverage. Plaintiffs' claims of promissory estoppel, fraud, or negligent misrepresentation fail because plaintiffs had ample time to review the Geico policy and should have been aware that it did not provide UIM coverage. We affirm.

/s/ Michael J. Riordan
/s/ David H. Sawyer
/s/ Kathleen Jansen