*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

ADVANCED SURGERY CENTER, LLC,

       Plaintiff-Appellant,

v

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

       Defendant-Appellee,

and

PROGRESSIVE MARATHON INSURANCE
COMPANY and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

       Defendants

UNPUBLISHED
August 10, 2023

No. 363015
Oakland Circuit Court
LC No. 2021-187500-NF

---

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendant Allstate Property and Casualty Insurance Company.[1] Plaintiff also challenges the trial court's denial of its motion for reconsideration.[2] We affirm.

---

[1] Defendant Progressive Marathon Insurance Company was dismissed from the case by stipulated order and is not a party to this appeal. Plaintiff's claims against defendant Michigan Automobile Insurance Placement Facility (MAIPF) were also dismissed, and MAIPF also is not a party to this appeal. References to "defendant" in this opinion refer to Defendant Allstate Property and Casualty Insurance Company.

[2] Although perhaps superfluous, the trial court subsequently also entered an order, premised on the entry of the two prior orders, dismissing plaintiff's case with prejudice.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff is the assignee of Anthony Jackson. In September 2020, Jackson was a passenger in a vehicle insured by defendant when that vehicle was struck from behind by another vehicle. Jackson was taken to a hospital emergency room, where he reported back pain; he was given Tylenol and released.

Over the next several months, Jackson reported suffering from back pain and was treated by various medical providers. Jackson underwent two MRI scans and was initially diagnosed with a "bulging, herniated disc." Jackson received injections for pain in his lower back, but he found the side effects of the injections intolerable. Dr. Jeffrey Oppenheimer, a surgeon and attending physician, reviewed Jackson's MRIs and told Jackson that the only option for permanent relief was surgery. Jackson underwent back surgery in January 2021 at plaintiff's facility.

Dr. Oppenheimer's Operative Report from the day of the surgery indicates that Jackson's preoperative diagnosis was "right lumbar radiculitis secondary to L34 HNP."[3] By contrast, the Operative Report indicates that Jackson's postoperative diagnosis was "right lumbar radiculitis secondary to L34 spondylosis."[4] *Id*. A section of the report titled "<u>INDICATIONS/RISKS:</u>" contained the following statements:

> The patient is a very pleasant male with a history of motor vehicle trauma on 09.21.20. He was a front seat passenger[5] when his vehicle was rear-ended. The diagnosis is a direct result of the injury she [sic] suffered in this unfortunate incident.

> The patient symptoms were refractory to extensive conservative care and had a significant impact on their activities of daily living.

> Risks discussed but were not limited to the following: anesthetic complications, infections, blood loss, neurological compromise, need for further surgery and death.

---

[3] "HNP" in this context means "herniated nucleus pulposus," which occurs "when the soft inner portion of the intervertebral disc ruptures or herniates, leading to pain, numbness, or weakness in the back or limbs." See https://www.medical-definitions.net/what-is-hnp-medical-abbreviation-meaning-definition/ (last accessed July 26, 2023).

[4] "Spondylosis" is a "stress fracture through the pars interarticularis of the lumbar vertebrae," a "fairly common" condition caused by the "repetitive stress" associated with "[b]eing human and walking upright," engaging in "sports that involve excessive or repetitive bending backward," and possibly "genetics." See https://www.hopkinsmedicine.org/health/conditions-and-diseases/spondylolysis (last accessed July 26, 2023).

[5] Jackson testified at his deposition, and later told the independent medical examiner, that he was actually seated in the rear passenger side of the vehicle. The vehicle's driver also stated that Jackson was in the back seat.

All questions were answered and informed consent was obtained. Surgical clearance was completed. IV's were secured. [*Id*. at pp 1-2.]

In another portion of the report entitled, "Procedure in Detail,' Dr. Oppenheimer noted, in relevant part, that "a flat plate dissector was used to probe along the dorsal aspect of the annulus fibrosus, and no mass lesions or irregularities could be felt. Thus, a decision was made, not to explore or remove the disc as the neural compression was from the dorsal disease." Dr. Oppenheimer further stated:

In addition, the ventral aspect of the disc was widely probed . . . and there was no significant mass effect or compression of the neural elements-the contour was smooth. Once again, I concluded that the pathology was solely-related (sic) to bony compression at this segment.

Plaintiff submitted a bill to defendant for Jackson's back surgery in the amount of $40,119.89. Defendant did not pay the bill. Plaintiff filed suit in April 2021, seeking payment of no-fault benefits owed to Jackson, specifically the expenses charged by plaintiff for its services in treating Jackson. During the course of discovery, Jackson underwent an independent medical examination (IME)[6] in May 2022. Dr. Paul Drouillard, the physician who conducted the IME, examined Jackson, reviewed his medical records, and prepared a medical evaluation report. Dr. Drouillard noted in his report that Jackson currently had "no evidence of any functional impairment." Dr. Drouillard further opined: "I believe the surgeries that were done on him were done for preexisting issues that had nothing to do with the event of September 21, 2020 [the date of the automobile accident]. There is evidence in the medical records of preexisting problems with his spine, for which he sought medical attention while in Texas."

Defendant moved for summary disposition in June 2022. Defendant argued that Dr. Oppenheimer's operative report indicated that, although prior to surgery Dr. Oppenheimer believed Jackson had suffered an acute disc herniation, surgical exploration had revealed that Jackson's pain was caused by degenerative conditions in the vertebrae unrelated to the accident. Defendant argued that this conclusion was supported by Dr. Drouilliard's report. Additionally, defendant's motion was accompanied by the report of an independent biomechanical analyst, Dr. Laura A. Wojick, Ph.D, P.E. Dr. Wojick stated in her report that she had reviewed Jackson's medical records, examination under oath, and deposition, as well as the recorded statement of the driver of the Dodge Journey minivan in which Jackson was a passenger[7] when it was struck from behind, and pictures of the minivan taken after the accident. Dr. Wojick noted that the photographs did not show any damage to the minivan, and opined that the lack of damage indicated a low-speed

---

[6] Our citation to the phrase "independent medical examination" is consistent with the parties' usage. We recognize that the independence of the examination may be called into question, see *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 364 n 3; 986 NW2d 451 (2022), and reference to a defense medical examination or evaluation may be more appropriate, see e.g., *Muci v State Farm Auto Ins Co*, 478 Mich 178, 182; 732 NW2d 88 (2007).

[7] Based on Jackson's and the vehicle driver's deposition testimony, Dr. Wojick assumed that Jackson was in a rear seat for the purposes of her biomechanical analysis.

-3-

impact that would not have resulted in significant injury to a passenger. Dr. Wojick further concluded that "[t]here is no evidence that Mr. Jackson was exposed to forces consistent with damage to his cervical spine or lumbar spine during this incident." Moreover, "[a]ny degenerative findings in Mr. Jackson's spine can not be considered to be biomechanical proof of traumatic injury from this very minor motor vehicle collision."

The trial court dispensed with oral argument, and in July 2022 issued an opinion and order granting defendant's motion for summary disposition. The trial court stated in relevant part:

> Allstate is entitled to summary disposition pursuant to MCR 2.116(C)(10). Even viewing the evidence in the light most favorable to Plaintiff, there is no genuine issue of fact for trial and Allstate is entitled to judgment as a matter of law. Allstate has met its burden of showing that the treatment was for injuries that were not caused by the motor vehicle accident. In addition to statements of the surgeon who performed the services concluding that the diagnosis was caused by degenerative changes in Jackson's spine, Allstate cites the opinions of an orthopedic surgeon and biomechanical expert, both of whom concluded that Jackson's injuries were not caused by the accident. . . . Plaintiff cites the statement in Dr. Oppenheimer's report that Jackson's diagnosis "is a direct result of the injury she [sic] suffered in this unfortunate accident." However, Dr. Oppenheimer concluded after the surgery that the pathology was solely related to bony compression in Jackson's spine, i.e., degenerative changes. Plaintiff has not presented admissible evidence to establish that a genuine issue exists for trial.

Plaintiff moved for reconsideration of the trial court's order. Plaintiff accompanied its motion with an undated document entitled "Addendum to Operative Report" signed by Dr. Oppenheimer. The addendum stated, in relevant part:

> Prior to the accident, the patient did not have any radicular complaints or symptoms in his lower back. The underlying spondylosis at L3/4 was asymptomatic. Following the accident, Mr. Jackson began to experience numbness, tingling, loss of strength, and a loss of dexterity. Clearly the accident triggered his symptoms and need for surgical intervention.
>
> It is my expert medical opinion within a reasonable degree of medical probability that Mr. Jackson's injury, and the need for surgery, is directly related to the MVA [motor vehicle accident] on 9/21/2020.

The trial court denied plaintiff's motion for reconsideration. The trial court subsequently entered an order dismissing plaintiff's case. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions,

admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The moving party has the initial burden of supporting its position with documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If it does so, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists. *Id*. To do so, "the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). This Court's review of a trial court's decision on a motion for summary disposition is limited to the evidence that had been presented at the time the motion was decided. *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 476; 776 NW2d 398 (2009).

This Court reviews de novo issues of statutory interpretation. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 577; 983 NW2d 798 (2022). This Court reviews for an abuse of discretion a trial court's decision on a motion for reconsideration. *Woods v SLB Prop Mgmt, LLC*, 277 Mich App 622, 629; 750NW2d 228 (2008).

## III.  SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition, contending that there was a genuine issue of material fact regarding whether Jackson had sustained bodily injury arising out of the use of a motor vehicle. We disagree.

MCL 500.3105(1) provides that "[u]nder personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." "Accordingly, MCL 500.3105(1) imposes two threshold causation requirements for PIP benefits." *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012). First, "a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Id*. (citation omitted). Second, an insurer is liable only for bodily injuries that are caused by the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. *Id*. Relevant to this case, PIP benefits payable are those for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a).

In this case, the central issue was whether Jackson's back surgery was necessitated, at least in part, by the injuries Jackson had allegedly suffered in the accident. We conclude that plaintiff failed to demonstrate a genuine issue of material fact, and that the trial court therefore appropriately granted defendant's motion.

The record in this case shows that Jackson complained of back pain after the accident, but was only treated with Tylenol at the emergency room and was released without further treatment. Jackson continued to suffer from back pain and, after trying palliative measures such as injections,

-5-

ultimately decided to have surgery. Dr. Oppenheimer's operative report does contain the statement that "the diagnosis is a direct result of the injury she [sic] suffered in this unfortunate incident." In context, however, it is clear that the diagnosis in question was the preoperative diagnosis of, in layman's terms, a herniated disc in Jackson's back causing pain. However, Dr. Oppenheimer's operative report also clearly states that, upon performing the surgery, he found no herniated discs in the affected area, but only degenerative changes to the discs, such as "profound facet and ligamentum flavum hypertrophy," which caused "bony compression." Dr. Oppenheimer's reported noted that this compression was "solely" responsible for the pathology that had led to surgical intervention. He accordingly amended his preoperative diagnosis in favor of a postoperative diagnosis of "right lumbar radiculitis secondary to L34 spondylosis."

Plaintiff does not dispute that spondylosis is a chronic degenerative condition caused by wear and tear on the discs, rather than an acute injury such as herniation. But plaintiff argues that, because Dr. Oppenheimer's pre- and post-operative diagnoses both referred to "right lumbar radiculitis," then at least a question of fact exists as to whether Jackson's pain was triggered by or worsened by the accident. We disagree. The diagnoses both acknowledge that Jackson suffered from right lumbar radiculitis,[8] which was, in essence, the technical term for the pain and irritation he had suffered. But the pre- and post- operative diagnoses differed significantly in the diagnosed *cause* of that pain. Although Dr. Oppenheimer initially believed Jackson's pain to be caused by a herniation (an acute injury to the disc), he discovered, upon examination, that this was not the case; rather, the pain was caused by chronic degenerative changes in his back. Dr. Oppenheimer's report indicates that the procedures performed on Jackson's discs after the spondylosis was discovered related only to relieving the compression of the nerves that was causing Jackson's pain—Dr. Oppenheimer specifically noted that he decided not to explore or remove the disc after no herniation was found. Further, nothing in Dr. Oppenheimer's operative report indicated that Jackson's right lumbar radiculitis or spondylosis was aggravated, worsened, or triggered by the accident.

In addition to Dr. Oppenheimer, defendant's independent medical examiner also concluded that Jackson's pain was caused by chronic degenerative conditions and that there was no evidence it was related to the accident. This conclusion was supported by the biomechanical expert, who concluded that Jackson would have been subjected to very mild forces from a low-speed collision and was unlikely to have suffered spinal damage.

In sum, plaintiff simply provided no evidence to rebut the evidence offered by defendant that the surgery performed on Jackson was for the purpose of treating pain caused by chronic degenerative conditions in his back, not by the accident. See *Quinto*, 451 Mich at 362. Jackson's treating physician determined that Jackson's pain was caused by spondylosis, a degenerative condition, and never opined that the pain was caused or worsened by Jackson's accident. The trial court therefore correctly granted defendant's motion for summary disposition. *Id*.

---

[8] Lumbar radiculitis or radiculopathy is pain and irritation in the lower back area caused by a nerve being pinched by spinal vertebrae. See https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy (last accessed July 25, 2023).

# IV. RECONSIDERATION

Plaintiff also argues that the trial court abused its discretion by denying its motion for reconsideration. We disagree.

MCR 2.119(F)(3) states:

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

Plaintiff argues that the trial court committed a palpable error by concluding that Dr. Oppenheimer's report showed that Jackson's pain and the resulting surgery was caused by degenerative changes in his spine and not the motor vehicle accident. In support of this argument, plaintiff cites the "Addendum to Operative Report" that accompanied its motion for reconsideration. We disagree that the trial court palpably erred. If plaintiff had additional evidence that Dr. Oppenheimer had diagnosed Jackson as suffering from aggravation of a degenerative condition as a result of the accident, it could have presented that evidence at summary disposition. " 'We find no abuse of discretion in denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.' " *Woods*, 277 Mich App at 630, quoting *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987). Further, Dr. Oppenheimer's unsworn, undated addendum appears not to be a contemporaneous medical report but appears to have been created after litigation of this issue commenced, and it thus was insufficient to create a genuine issue of material fact. See *Liparoto Const, Inc v General Shale Brick, Inc*, 284 Mich App 25, 33; 772 NW2d 801 (2009) (stating that unsworn statements "are not sufficient to create a genuine issue of material fact to oppose summary disposition under MCR 2.116(C)(10)").

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A)(1).

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney